**UNICON MANAGEMENT CORP.,**
Plaintiff-Appellant,

v.

**KOPPERS COMPANY, Inc., Defendant-Appellee,**

**Fletcher L. Byrom, Walter P. Arnold, H. A. Denny, R. G. Wilson, W. A. Anderson, Paul H. Titus and Harry W. Powell, Defendants.**

Nos. 313, 314, Dockets 30038, 30125.

United States Court of Appeals
Second Circuit.

Argued April 11, 1966.

Decided Sept. 7, 1966.

See also D.C., 38 F.R.D. 474; D.C., 250 F.Supp. 850.

Morris B. Abram, New York City (Thomas R. Farrell, Jr., Martin R. Gold, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on the brief), for plaintiff-appellant.

William Piel, Jr., New York City (Robert E. Barnett, Sullivan & Cromwell, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge:

The question for decision is whether the district court abused its discretion in entering a temporary injunction against plaintiff which enjoined plaintiff and its officers from denying Koppers and its officers and employees the right to manage the offices of the defendant's Malan Department and to have access to the Malan offices at 2 Park Avenue, New York, and from de-

stroying or mutilating or removing any records and papers relative to the Malan Department business; and from carrying on any Malan business except to the extent requested and authorized on behalf of Koppers by certain of its officers.

We find that Judge Bonsal's granting of the injunction, after hearing witnesses and upon the papers submitted, was not an abuse of discretion. He was well justified in concluding, on the record before him, that failure to safeguard Koppers by such an injunction might well have caused irreparable harm to Koppers while the granting of such relief could not cause irreparable harm to Unicon. We also find that the temporary restraining order, at the time it was issued by the district court, was a reasonable and necessary means of preserving the position of the parties as that was defined by their agreement and as clarified by the testimony at the hearing.

Koppers was and is a large company which had long engaged in heavy industrial work. In 1963, because of its interest in acquiring a company with experience in constructing water filtration and sewage disposal systems, it negotiated with the four Feldman brothers who had done such business through the Malan Construction Corporation, which they owned. In January 1964, Koppers and the Feldmans executed several agreements which resulted in the sale of the Malan business to Koppers and arrangements whereby the Feldmans, through the Unicon Management Corp., would continue to operate Malan as the Malan Department of Koppers for five years.

Koppers acquired the Malan name and part of its fixed assets for $75,000, and the "net contract assets" of two contracts on which Malan was then engaged, one for a water filtration system for Youngstown, Ohio, and a second for a sewage disposal plant at Newton Creek in New York City. For these two contracts Koppers paid $1,757,000 cash and also agreed to pay, on February 1, 1966, an additional $1,977,000, the amount of an outstanding loan owed by Malan to the Mellon National Bank in Pittsburgh, payment of which Koppers unconditionally guaranteed.

Under a "management contract," the four Feldmans, through Unicon, as its sole shareholders, officers and employees, agreed to provide management services to Koppers for five years for its Malan Department. Unicon's duties were specified to include the active daily management and administration, active solicitation of business and contracts, preparation of bids and estimates for customers, and supervision of all jobs undertaken by the Malan Department. In addition, Unicon was to render assistance in long-range planning, supply technical information and know-how relating to the construction business generally, and to assist Koppers in hiring Malan Corporation employees for the new Malan Department of Koppers. Unicon was permitted to use these new Koppers employees to complete certain work for a maximum of two years for which Unicon agreed to pay $50,000 each year.

Unicon would receive 50% of Malan's profits before taxes and also 10% of profits exceeding $1,500,000 in any year, in addition to $100,000 per year for five years as compensation for sundry expenses.

Apparently both parties were optimistic that with the Feldmans' experience and knowledge, especially in the area of lump sum bidding, and the name and resources of Koppers each party would benefit financially during the five years. Moreover, the Feldmans received large immediate cash benefits and Koppers hoped, after five years, to have an established department which it could then run itself.

Plaintiff's and defendant's versions of the relationship between the parties differ somewhat. Unicon claims that the first year "gave every indication" that the agreement would be a "resounding success." The district court found

that during this period four new contracts were entered into, representing fifty million dollars of construction bids, including two contracts for 38 million which affect vital national interests. During this period, however, Koppers complained that profits on the purchased contracts were seriously deteriorating; that its hiring and firing procedures were not being followed, and as a result that the number of employees hired, as well as rate of employee turnover, was excessive. Moreover, the use of Koppers' employees by Unicon was alleged to be excessive. More serious differences of opinion between the parties arose in February 1965 regarding proper management of the Malan Department. Disagreement reached such a high pitch that Koppers' officers assigned to deal with Unicon were apparently threatened with physical expulsion from the Malan office.

Unicon claimed Koppers was interfering with its untrammeled right to manage the Malan Department for the five-year period. This untrammeled right, it is argued, flows from an interpretation of the "management contract," and from Unicon's right to receive most of the profits, which, Unicon claims, represents "the major consideration for the sale of Malan." In turn, Koppers claimed that it was denied access to its own department's files and personnel, and consequently Koppers' executives could not make informed judgments regarding the status of the work or of the problems involved. The unusual nature of this complaint is highlighted by the district court's findings that senior executives of Koppers Engineering and Construction Division were required to give personal assurances to its Malan customers that they would be directly concerned in the administration of contract performance, in bargaining to obtain the four new Malan contracts, and that at that time, some of the Malan contracts, including one contract of vital national concern with the U. S. Navy, were suffering from a lack of direction and control.

On June 29, 1965, Unicon commenced this action in the district court, seeking damages for $35,000,000 and an injunction against "further interference" by Koppers and its officers with its management rights under the contract. Koppers duly filed its answer, denying plaintiff's material allegations, and counterclaiming for an injunction to restrain Unicon from interfering with Koppers' management and control of the Malan Department, and damages of approximately $1,600,000. On July 26, 1965, following a hearing, Judge Bonsal granted a preliminary injunction in favor of Koppers against Unicon and the Feldmans which restrained them from destroying the files of the Malan Department, from denying access to the officers and personnel of Malan to authorize Koppers' employees, and

" * * * from acting or participating in the management and operation of the Malan Construction Department of Koppers Company, Inc., except as and to the extent requested and authorized on behalf of Koppers Company, Inc. * * *"

Unicon moved on September 22, 1965, pursuant to Rule 62(c), Federal Rules of Civil Procedure, to vacate, suspend and modify the interlocutory injunction on the ground that it was erroneously issued. After hearing argument of counsel on October 27, 1965, Judge Bonsal denied the motion from the bench. It is from this preliminary injunction, and the subsequent denial of Unicon's motion to vacate the injunction, that these consolidated appeals arise.

On the basis of the findings of fact made by the district court, which we must accept unless clearly erroneous, Federal Rules of Civil Procedure, Rule 52(a), we find that it was not an abuse of discretion to issue a preliminary injunction in this case. The court below properly found that the right of ultimate control over its own department was vested in Koppers. Clearly, therefore, the portions of the injunction which prevent and restrain Unicon and the Feldmans from destroying the files of the

Malan Department, and from denying access to the Department office to authorized employees of Koppers, were properly granted.

■ A more difficult question is presented by that portion of the order enjoining plaintiff and its officers from acting or participating in the management and operation of Malan except to the extent requested by Koppers. Appellant Unicon contends, that in defining the interim management roles of the parties, the district court has rewritten the management contract, and to that extent failed to maintain the status quo *ante litem*. As such, a preliminary injunction should not have been granted as a matter of law. We cannot agree.

We think it was proper to grant the relief requested by Koppers. The preliminary injunction is solely an interim relief; the court below did not pretend to decide the merits in this case. The rights and obligations of the parties will be decided by a court following a full trial, to the extent they are relevant to the breaches alleged by both parties. Contract interpretation at this stage was necessary only to understand the basic agreements between the parties so that this injunction, temporary in nature, could be fashioned to keep the parties in their relative positions pending trial. The court below construed the agreements in order to determine the relationship of the parties to the Malan business. It properly found that Koppers' right of control was paramount and granted this injunction accordingly.

We find that the order does serve to maintain and preserve the status quo; inasmuch as it does reflect Koppers' right of ultimate control, and in doing so, prevents the dissipation of the business and the possible loss of records.

■ It is hornbook law that "the general purpose of a preliminary injunction is to preserve the status quo pending final determination of the action." 7 Moore, Federal Practice ¶ 65.04 [1] (2d ed. 1955). Obviously, where agreements which require joint action lead to

disputes between the parties which cannot be dissolved short of litigation, it is impossible to place the parties in the exact positions which they enjoyed prior to their disagreement. It follows that the court must have discretion to fashion such a preliminary injunction as may best approximate past positions in the light of the basic rights of the parties.

■ Other courts have granted preliminary relief without regard to establishing the status quo, as long as there was a showing of potential irreparable harm, e. g., Ross-Whitney Corp. v. Smith, Kline & French Lab., 207 F.2d 190, 199 (9 Cir. 1953), and at other times, as long as the injunction creates a common sense modus vivendi to keep peace between the contracting parties, and avoids unnecessary economic waste until the case is adjudicated, e. g., Welton v. City of Lockport, 13 Misc.2d 341, 177 N.Y.S.2d 438 (Sup.Ct.1958). Here, we need only find that the injunction serves "to keep the parties, while the suit goes on, as far as possible in the respective positions they occupied when the suit began." Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742 (2 Cir. 1953).

■ Appellant also contends that there was no showing by Koppers, nor an express finding by the district court, that Koppers would ultimately prevail on the merits. Such a finding is not required.

■ We reaffirm our holding in H. E. Fletcher Co. v. Rock of Ages Corp., 326 F.2d 13, 17 (2 Cir. 1963), that the party seeking a preliminary injunction has a "burden of convincing [the court] 'with reasonable certainty' that it 'must succeed at final hearing.' Hall· Signal Co. v. General Ry. Signal Co., 153 F. 907, 908 (2 Cir. 1907)," where, as there, it appears that a "lack of adequate showing of irreparable damage" also exists. But we do not think that what was said in *Fletcher* is a departure from the more generally accepted statement of the rule that "it will ordinarily be enough that

the plaintiff [defendant here] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation," where, as here, "the balance of hardships" tips decidedly toward the party requesting the temporary relief. Hamilton Watch Co. v. Benrus Watch Co., supra, 206 F.2d at 470. The likelihood of success is "merely one strong factor to be weighed along with the comparative injuries of the parties." 3 Barron & Holtzoff, Federal Practice & Procedure § 1433, at 493 (1958). Nevertheless, we think that defendant Koppers has submitted ample evidence to support a finding that it will prevail on the question of ultimate control, and moreover, that it will establish breaches of contract by Unicon.

Appellant Unicon further contends that the district court abused its discretion, in that the court's granting of the injunction causes irreparable harm to Unicon, allows Koppers to be shielded from the consequences of unilateral action, and requires continuous judicial supervision. We do not agree.

 First, the court below found that no irreparable harm would occur to plaintiff Unicon if management and control is exercised by Koppers' management over its Malan Department. The record supports this finding. It appears that the harm which Unicon might suffer, if any, exists in the difficulty of assessing damages, should Unicon prevail on the merits. But it should be noted that the difficulty of assessment will continue to exist whether or not we allow the injunction to remain in effect. In fact, it does not even seem that the injunction makes that computation more difficult, inasmuch as the alternative of no injunction might well bring about the dissipation of the business.

 Secondly, Koppers is not shielded from the consequences of its own actions. Nothing in the injunction has prevented either party from declaring the other in breach, and quitting, and, if in fact Koppers has breached its contract with Unicon, it could not avoid liability for the consequential damages caused Unicon.

 While it is generally true that courts should not, in the exercise of sound discretion, grant relief which requires "continuous judicial supervision," cf. Bethlehem Engineering Export Co. v. Christie, 105 F.2d 933, 935 (2 Cir. 1939), we think this case is not one which invites the application of that principle. The preliminary injunction is clearly and simply stated; Unicon is enjoined from acting or participating in the management and operation of Malan "except to the extent requested and authorized" by certain Koppers' executives, who are specifically cited in the order. The other portions of the order are equally clear.

The order of the district court serves to prevent the dissipation of the business. Koppers, more than Unicon, had its name and the good will of Malan at stake in the projects already under way. It was Koppers alone which was obligated to pay the operating losses, beyond losing its own share of the profits if the business failed. It was Koppers, as the district court found, which was entitled to exercise ultimate control over its own department. The injunction reflects these considerations.

 Ruling as we do that no abuse of discretion has been shown in the granting of the preliminary injunction below, we also find there was no abuse of discretion in denying the motion to dissolve it under Rule 62(c), Federal Rules of Civil Procedure.

The orders of the district court are affirmed.