**Elliot GOLDBERG, Selwyn Cohen, Samuel Ochlis, Justie Hutnick and Solomon M. Feldman, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**FIRST DEVONSHIRE CORPORATION et al., Defendants.**

No. 70 Civ. 4503.

United States District Court,
S. D. New York.

Dec. 7, 1970.

Rabin & Silverman, New York City, for plaintiffs; I. Stephen Rabin, Kresge & Cohen, Donald M. Kresge, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendants New York Stock Exchange, Bernard J. Las-

ker, Robert W. Haack, Benjamin E. Billings, Joseph H. Brown, Ralph D. De-Nunzio, John J. Flanagan, Robert J. Fraiman, Harry A. Jacobs, Jr., Solomon Litt, Dan W. Lufkin, Allan H. McAlpin, Jr., William J. Nammack, Stephen M. Peck, Robert C. Picoli, Felix G. Rohatyn, William R. Salomon, Robert L. Stott, Jr., Maurice F. Summers and Albert B. Tompane; William E. Jackson, Russell E. Brooks, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This is a class action brought by plaintiffs on behalf of themselves and other customers of First Devonshire Corporation (Devonshire), a broker-dealer, whose customers' accounts were frozen so that their securities and cash cannot be withdrawn or transferred. Devonshire is a suspended member organization of the defendant New York Stock Exchange (the Exchange). The action is primarily directed against the Exchange and the Trustees of its Special Trust Fund, established pursuant to a Deed of Trust, and in effect seeks reimbursement out of the Fund for losses which customers of Devonshire may sustain. In substance, the complaint alleges violations by Devonshire, individual defendants and by the Exchange of sections 6, 8(c), 10(b) and 15(c) of the Securities Exchange Act of 1934, 15 U.S.C., sections 78f, 78h(c), 78j(b) and 78o(c) and Rule 10b–5 of the Securities and Exchange Commission (the Commission) promulgated thereunder. The complaint, insofar as the Exchange is concerned, alleges, among other matters, that it failed to disclose the financial condition of Devonshire, thereby inducing its customers to maintain accounts with it; the issuance of false and misleading statements in asserting that the Fund was available to protect customers of brokerage houses, including customers of Devonshire; negligence in improperly supervising Devonshire's operations; misrepresentation of its intentions to provide financial assistance from the Fund to plaintiffs and other customers of Devonshire; and other causes of action based on the failure of the Exchange to provide for the orderly liquidation of Devonshire. The Trustees of the Fund are charged with breach of their fiduciary obligations and arbitrary and capricious refusal to commit Fund assets to assist plaintiffs and other Devonshire customers. The Exchange and the Fund Trustees deny all the allegations and disclaim legal liability to reimburse Devonshire customers out of the Fund, or that the plaintiffs have any legal right to resort to the Fund.

The action also names as defendants Devonshire and various individuals allegedly responsible for its New York operations. In general, the complaint against Devonshire and the individuals tracks the allegations of a complaint in an action commenced by the Commission in August 1970, following which a preliminary injunction was issued against Devonshire. Among other matters, Devonshire was enjoined from continuing to commit acts in violation of the Securities Act and regulations of the Commission, including the unlawful hypothecation of securities, and also from doing business as a broker-dealer. Thereafter, on October 30, 1970, Devonshire was adjudicated a bankrupt. The relief sought in this action includes damages, punitive damages, and a permanent injunction enjoining payments from the Fund until the rights of plaintiffs and other members of their class are determined, unless payments are made to them on a pro rata basis with others receiving payments from the Fund; also, that the Fund be required to provide funds for an orderly liquidation of Devonshire and an "unfreezing" of the accounts of Devonshire customers composing plaintiffs' class.

The plaintiffs here seek a preliminary injunction against the Exchange and the Trustees of the Fund which would prohibit payments from the Fund to customers of financially distressed member

firms unless such payments are made to customers of Devonshire on the same basis as heretofore made in at least ten other instances of broker financial distress, or until the rights of the plaintiffs and other customers of Devonshire to Fund assets are determined.

It is familiar teaching that a preliminary injunction should be granted only upon a clear showing by the party seeking the extraordinary remedy (1) of probable success upon a trial on the merits; (2) of likely irreparable damage to him unless the injunction is granted; and (3) that the harm to him outweighs the injury to others if it is denied.[1] Upon none of these elements have plaintiffs made the necessary showing.

The first, a clear showing of probable ultimate success, necessarily subsumes a legal right in favor of the party seeking the injunction and a correlative obligation on the party against whom the drastic remedy is sought. Here, plaintiffs' claim to payment from the Fund as a matter of legal right is, to say the least, tenuous. The constitutional provision of the Exchange (Article XIX) authorizing the Fund and the Deed of Trust (paragraph First) establishing the Fund each specify that it shall be used only to the extent, if any, and in such manner as determined by the Trustees. In addition to this broad discretionary power vested in the Trustees, both the Constitution of the Exchange and the Deed of Trust provide not only that no member, member firm or member corporation of the Exchange, but that "no other person shall in any event have any claim or right of action, at law or in equity, whether for an accounting or otherwise, against the Exchange, the Trustees, or any other person, or against the Fund, as a result of any action taken or the failure to act by the Trustees in the exercise of their discretion."[2] And finally, the same provisions state: "Whether or not expenditures from the Fund shall be made in a case involving a particular member, member firm or member corporation, and, if so, in what manner, to whom and to what extent,

1. Clairol Incorporated v. Gillette Co., 389 F.2d 264, 265 (2d Cir. 1968); Symington Wayne Corp. v. Dresser Industries, Inc., 383 F.2d 840, 841 (2d Cir. 1967); Studebaker Corp. v. Gittlin, 360 F.2d 692, 698 (2d Cir. 1966); H. E. Fletcher Co. v. Rock of Ages Corp., 326 F.2d 13, 17 (2d Cir. 1963); Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738 (2d Cir. 1953).

In this Circuit, the rule on applications for preliminary injunctive relief has recently been formulated in these terms:

"The purpose of a preliminary injunction is to maintain the status quo pending a final determination of the merits, Unicon Management Corp. v. Koppers Co., 366 F.2d 199, 204 (2 Cir. 1966); Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742 (2 Cir. 1953); 7 Moore's Federal Practice, ¶ 65.04, at 1625 (2d ed. 1966). It is an extraordinary remedy, and will not be granted except upon a clear showing of probable success and possible irreparable injury. Clairol, Inc. v. Gillette Co., 389 F.2d 264, 265 (2 Cir. 1968); Societe Comptoir De L'Indus. etc. v. Alexander's Department Stores, Inc., 299 F.2d 33, 35, 1 A.L.R.3d 752 (2 Cir. 1962). However, 'the burden [of showing probable success] is less where the balance of hardships tips decidedly toward the party requesting the temporary relief.' Dino De Laurentiis Cinematografica, S. p. A. v. D-150, Inc., supra [366 F.2d] at 375. In such a case, the moving party may obtain a preliminary injunction if he has raised questions going to the merits so serious, substantial, and difficult as to make them a fair ground for litigation and thus for more deliberate investigation."

Checkers Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969); see also Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205-1206 (2d Cir. 1970); Dino de Laurentiis Cinematografica. S. p. A. v. D-150, Inc., 366 F.2d 373, 375 (2d Cir. 1966); Unicon Management Corp. v. Koppers Co., 366 F.2d 199, 204-205 (2d Cir. 1966).

2. The language of the Constitution of the Exchange is almost identical to that of the Deed of Trust. The latter is quoted here.

shall at all times remain exclusively within the sole and absolute discretion of the Trustees." Acting under these provisions and others, the Trustees decided not to exercise their discretion to assist customers of Devonshire. The assigned reason is that in the instances where the Fund is being used to assist customers of member organizations, the Trustees conditioned relief upon the absence of bankruptcy proceedings by or against the firm, or the appointment of any receiver for it. But whatever the Trustees' reasons for denial of relief to Devonshire customers out of Fund assets, in the light of their discretionary power, specified in the Deed of Trust, which, with equal specificity, denies a right of action at law or in equity to any member of the Exchange or any other person "as a result of any action taken or the failure to act by the Trustees in the exercise of their discretion," the plaintiffs carry a heavy burden to establish a legal right to compel the use of the Fund in their favor. Perhaps in recognition of this, plaintiffs disavow that any "claim is made to Trust assets on the basis of trust instruments." [3] Rather, they assert a legal right to resort to the Fund upon what they term the "public conduct of the Trustees" and the Exchange. They seek to sustain this claim, not altogether clearly articulated, upon alleged statements made by Exchange officials appearing in the public press or in testimony before congressional bodies. The contention is that the statements had the effect of inducing plaintiffs and others to continue to do business with Exchange members upon an implied firm commitment by the Exchange that the Fund was available to make good losses sustained by all customers of all financially distressed Exchange member firms. The claim that plaintiffs and the public were thus lulled into a false sense of security that their investments were adequately protected by the Fund is dubious. First, the defendants challenge that those to whom the statements were attributed were officers or governors of the Exchange, or authorized, either expressly or impliedly, to commit the Exchange. Second, the statements upon which plaintiffs rely to draw an inference that the Fund automatically insured all customers of distressed Exchange firms are not free from ambiguity. Third, evidence presented on this motion indicates that from the time the Fund concept was first evolved and the Fund established, the public statements of Exchange representatives have repeatedly noted the discretionary power of the Trustees.

Plaintiffs also seek to sustain their claims upon theories of arbitrary abuse of discretion by the Trustees,[4] breach of contract, common law fraud and deceit, and violation of the federal securities laws. Whatever theory plaintiffs advance, their right to relief is not clear enough or the probability of success upon a trial sufficiently established to invoke the court's power to grant the extraordinary relief sought. Moreover, there is no evidential support for the conclusory allegations upon which these claims are predicated.

Next, plaintiffs have also failed to establish that a denial of the injunction would result in likely irreparable injury to them. They contend that if they have to await a trial of the issues, the Fund may be depleted by reason of commitments already made and likely to be made. However, in this instance, too, other than the mere allegation, there is no evidential support for this claim. There has been no showing that absent an injunction the Fund and the Exchange would not be able to satisfy any judgment plaintiffs may secure, or that the Exchange would not make such additional contributions as may be required to replenish the Fund.[5] Moreover, if

---

3. Plaintiff's memorandum, p. 14.

4. This claim appears at odds with plaintiffs' disavowal of any claim based upon the Trust instruments.

5. Constitution of the New York Stock Exchange, Article XIX, sec. 1, para. 2.

the Trustees have breached any fiduciary or any other obligation owing to the plaintiffs,[6] there is no showing, indeed no contention, that they could not respond to any money judgment should plaintiffs prevail.

Finally, we consider the third element, the balancing of likely harm as between plaintiff and other parties. At present, customers of ten Exchange member organizations now in liquidation are receiving assistance from the Fund. An injunction would terminate future assistance, interrupt the existing orderly liquidation of the firms involved, and prevent the Trustees, in the exercise of their discretion, from extending assistance to customers of firms other than those now being assisted. The injury to customers now being assisted and foreclosure of the right of Trustees to assist others, if the injunction is granted, far outweighs any likely harm to plaintiff if it is denied at this time.

The motion for a preliminary injunction is denied in all respects.

---

6. *Cf.* Irving Trust Co. v. Deutsch, 73 F.2d 121 (2d Cir. 1934), cert. denied, Biddle v. Irving Trust Co., 294 U.S. 708, 55 S.Ct. 405, 79 L.Ed. 1243 (1935).