**Michael J. MAYE et al., Plaintiffs,**

v.

**John V. LINDSAY et al., Defendants.**

**No. 72 Civ. 4912.**

United States District Court,
S. D. New York.

Nov. 22, 1972.

---

Robert A. Kennedy, Doran, Colleran, O'Hara & Dunne, New York City, for plaintiffs.

Norman Redlich, Corp. Counsel, New York City, for defendants.

## MEMORANDUM

STEWART, District Judge:

This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure declaring that the manner in which the defendants have provided fire protection for the City of New York violates the Fourteenth Amendment to the United States Constitution. The complaint also asks for injunctive relief with respect to various policies and practices of the defendants.

The plaintiffs are various individuals who reside in the five Boroughs of New York, including two firemen. One of the latter is Michael J. Maye, who is President of the Uniform Firefighters Association, a Union which represents more then 10,000 firemen. He sues, however, in his individual capacity and not as President of the Union. The defendants are Mayor Lindsay, Sanford Garelik, President of the New York City Council, and Robert Lowery, Commissioner of the Fire Department of the City of New York.

The complaint alleges that the New York City Fire Department, pursuant to the New York City Charter, has the sole and exclusive power and authority to extinguish fires in the City of New York. The provision of fire protection services by the Fire Department is claimed to be fundamental and essential to the security and order of the City. It is further alleged that the City has failed to provide an adequate level of fire protection to all residents of the City and in particular, to residents of certain ghetto areas. The incidence of fires and fire losses has risen dramatically in the last ten years throughout the City and in the Ghetto areas this increase has been substantially greater than in the City as a whole. During the same ten-year period it is claimed that the manpower available to the Fire Department has decreased, with a resulting increase in the workload of firefighters which has limited their capacity to engage in firefighting activities.

In particular, the complaint alleges that until this year the regular initial response to a box alarm in the City was three engine companies and two ladder companies. However, on August 21, 1972 this was reduced to an initial response of two engine companies and two ladder companies. Moreover, it is alleged beginning in November 1969 a pilot program was initiated, predominately, if not entirely, in ghetto areas providing for an initial response of two engine companies and one ladder company during the period from 3:00 p. m. to midnight, the time of day of the highest incidence of fires. It is claimed as a result of both of these steps that there has been a sharp increase in fire losses, deaths and injuries.

On November 8, 1972, Commissioner Lowery announced that on November 22 the Fire Department planned to close six engine companies and to relocate seven other engine companies and squads. The record indicates that two of the companies to be disbanded and five of the units to be relocated are in ghetto areas. The City plans to eliminate a to-

tal of twenty fire companies in the course of its current program.

The complaint was filed on November 17 and on the same day the plaintiffs filed an order to show cause why a preliminary injunction should not be issued restraining the proposed elimination or relocation of these thirteen units. Briefs were filed on November 20 and argument of the motion for preliminary injunction was heard on November 21.

Plaintiffs in support of their motion submitted affidavits by, among others, Michael Maye and Edward McAniff, who was a member of the Fire Department from 1936 to 1965 rising through the ranks to become Chief of the Fire Department, in charge of the Bureau of Fire, from August 1963 to January 1965. These affidavits, particularly the McAniff affidavit, elaborate in considerable detail the allegations of the complaint.

The defendants, in response, submitted an affidavit by Commissioner Lowery. It asserts that the Fire Department has in the last several years introduced many new programs in a continuing effort to maintain the highest possible level of fire protection and that it carefully reviews the relationship of the use of its resources to the demands of its services. It acknowledges that there has been an increase in the demand for services and that, in an effort to meet this demand, an Adaptive Response Program has been initiated. Formerly, an initial response to a fire alarm was provided by three engine companies and two ladder companies, but in August, 1972, under the provisions of this newly instituted program the initial response was changed to two engine companies and two ladder companies. Previously, a pilot program had been initiated in the South Bronx in 1969 providing an initial response force of two engine companies and one ladder company. The affidavit asserts that these programs have been successful. In addition, the Fire Department concluded that a redeployment program was necessary in order to equalize and improve fire protection. The program initially involves thirteen units and the effective date of the program is November 22, 1972. It is contended that the companies to be redeployed were carefully selected and that the program will result in more efficient use of fire protection equipment and personnel. It is further claimed that if a preliminary injunction is granted at this late hour it "will wreak havoc in the operation of the Fire Department" and "will necessitate a complete revamping of policies and schedules and will compromise the safety of the people of New York".

█ On this motion for a preliminary injunction the movant must show a real likelihood of irreparable injury and a probability of ultimate success on the merits. Intercontinental Container Transport Corp. v. New York Shipping Ass'n, 426 F.2d 884 (2d Cir. 1970); Unicon Management Corp. v. Koppers Co., 366 F.2d 199, 204–205 (2d Cir. 1966); Tennant & Sons, Inc. v. New York Terminal Conference, 299 F.Supp. 796, 798 (S.D.N.Y., 1969). The action to be taken appears to be part of an overall program which the Fire Department has had underway for some time following considerable analysis of the problem. There is, of course, not yet any demonstration as to whether the redeployment program will be successful, but the administrative body charged with the responsibility for fire protection has, it would appear, reasonably concluded that the program should be undertaken.

█ In weighing the equities in this case, I have concluded that the plaintiffs have neither made a sufficient showing to contradict the sworn statements of Commissioner Lowery that a preliminary injunction at this time will "wreak havoc", nor have they adequately demonstrated that irreparable harm will befall the plaintiffs should this motion be denied. To a great extent, the statistical evidence presented by the plaintiffs in support of their motion bears only on

the question whether fire protection afforded the residents of New York City is presently adequate. (This issue, which is squarely raised by the complaint, is not presented on this motion.) The data is sparse with respect to the specific consequences which will result both to the residents of the districts where the companies are now located and the residents of the districts to which the companies and squads are scheduled to be redeployed on November 22. In fact, what little evidence is presented on the question of redeployment appears in the affidavit of Mr. McAniff and is not statistically documented.

The Court is not concerned at this time with the question whether the City is providing adequate firefighting services to the City. Rather, the precise issue before the Court on this motion is whether the City should be enjoined from proceeding with its proposed plan to improve fire protection services by initially disbanding six and redeploying seven of the 377 existing fire units within the City. In this regard, we note the *guidelines provided by the Second Circuit in Beal v. Lindsay, No. 72–1194 at 29, 468 F.2d 287 (C.A.2, 1972)* :

". . . in determining whether there has been equality of effort, federal courts must not hold municipalities to standards of precision that are unattainable in the process of government."

The statistics contained in Commissioner Lowery's affidavit on page 9 indicate that the three ghetto areas which the plaintiffs particularly claim have been discriminated against (Harlem, South Bronx and Bedford-Stuyvesant) are now served by 72 engines and after the redeployment will be served by 67

engines. Although the plaintiffs have made a showing that ghetto areas experience a higher incidence of fires than other areas, I cannot conclude on the record before me that there has been a sufficient demonstration of irreparable harm. It appears that when these companies are disbanded or relocated manpower and equipment strength will not be decreased since the firemen and engines will be reassigned to other companies throughout the City. Moreover, plaintiffs have presented no evidence to refute the contention that the residents in those areas to which the redeployed companies will be moved will not suffer equally serious consequences should this Court prohibit the schedules relocation.

Plaintiffs, however, have raised substantial question on the merits. The Court of Appeals for this Circuit has indicated in its recent decision in Beal v. Lindsay, No. 72–1194, 468 F.2d 287, at 288 (C.A.2, 1972) that "serious and continued discrimination in the level of effort expended on municipal services to areas predominately populated by minority racial groups violates the equal protection clause, even without direct proof of 'bad faith, ill will or any evil motive' ".

On its face, the complaint enumerates serious allegations with respect to plaintiffs' rights to equal and adequate fire protection services under the Fourteenth Amendment to the United States Constitution. Resolution of this controversy is of interest not only to the individual named plaintiffs but also is of immediate concern to the public interest. Under these circumstances, the Court will insist upon a speedy disposition of these issues. The motion for a preliminary injunction is denied.

So ordered.