**GSE DYNAMICS, INC., Plaintiff,**

v.

**"John DOE", true name unknown to Plaintiff, person intended being Commanding Officer, United States Army Missile Command, Redstone Arsenal, Alabama, et al., Defendants.**

**No. 74C 1156.**

United States District Court,
E. D. New York.

Sept. 24, 1974.

Norman Jacobson, Bayside, N. Y., for plaintiff.

David G. Trager, U. S. Atty., by Jonathan M. Marks, Asst. U. S. Atty., for defendants.

*Memorandum of Decision and Order*

PLATT, District Judge.

By an Order to Show Cause with a summons and complaint and affidavits annexed plaintiff seeks a preliminary injunction restraining cancellation of a Request for Proposal (RFP) under which plaintiff is a bidder for a Department of Defense contract to manufacture some 50 Roller Tracks, an essential and integral machine part of the NIKE-Hercules Missile Radar System.

In addition to such relief, the Order to Show Cause asks for an order directing the defendant Brennan to render a decision on the administrative appeal of the plaintiff from the decision of the defendant Contracting Officer, Paris, that plaintiff is not a manufacturer within the Walsh-Healey Public Contracts Act and directing said Contracting Officer to make an award of a contract pursuant to the said Request for Proposal to the plaintiff.

In the underlying action plaintiff seeks a judgment directing the defendant Contracting Officer to award the proposed contract to the plaintiff; directing the defendant Department of Labor to withhold or cancel any decision declaring plaintiff not a "manufacturer" under the Walsh-Healey Public Contracts Act; directing the Department of Labor to deliver copies and to disclose to plaintiff all documentation received from the Contracting Officer and Army Material Command not already contained in the Contracting Officer's administrative record and that plaintiff have a suitable period thereafter in which to answer, contravert or otherwise submit evidence relating thereto, and

that the defendants be enjoined from cancelling the aforesaid RFP or awarding the requirements described therein to any other company.

Plaintiffs maintains that unless the preliminary injunction is issued by this Court the defendant Contracting Officer would be in a position to cancel the Request for a Proposal (RFP) and that thereafter the plaintiff would have no standing to contest the Department of Labor's decision because all of its rights are dependent upon its status as a bidder.

The Order to Show Cause originally came on before Judge Edward R. Neaher who denied plaintiff's request for a temporary restraining order when the Assistant United States Attorney representing the defendants apparently agreed that the RFP would not be cancelled pending a final decision by the Wage and Hour Division Administrator of the Department of Labor and a possible appeal to the Secretary of the Department of Labor. Such agreement allegedly expired on September 9th when the motion came on to be heard and a hearing on some of the issues was ordered by this Court. Such hearing not having been concluded on September 9th, this Court directed that there be an interim stay of any cancellation of the RFP pending the conclusion of such hearing and determination by this Court.

At the hearing held on September 9, 12 and 20, testimony was taken from Messrs. Daniel J. Shybunko and Anthony Osmeloski, president and vice president, respectively, of the plaintiff, of Mr. Robert H. Brown, lead system engineer of the U.S. Army Missile Command, and of Major William M. Whitten III, labor advisor to the Department of the Army, and several exhibits were marked in evidence. The government also filed affidavits in opposition to plaintiff's motion papers.

### The Facts

On or about June 28, 1973 the United States Army Missile Command at Redstone Arsenal issued a Request for Proposal (the "RFP") for 50 roller tracks which, as indicated above, are an essential and integral machine part of the NIKE-Hercules Missile Radar System.

In accordance with normal Army procedures and regulations, a team of technical experts of the Defense Supply Agency of the Defense Contract Administration Services Department (DCASD), one of whom was the aforesaid Mr. Brown, made an on-site visit to the plaintiff's plant on October 25, 1973 to determine its qualifications as a manufacturer within the meaning of the Walsh-Healey Act and ASPR 12–603.1.

These experts found (and indeed it does not appear to be disputed) that the plaintiff was not an established manufacturer of roller tracks. The experts further found that "equipment to produce the item does not exist at bidder's facility, that it does not have the capability to make certain necessary drill fixtures, or to manufacture the bid item, which is a product of a machine shop" and hence it did not "meet the requirements of a bidder newly entering the manufacturing of roller tracks of the type bid upon". (Slepian Report 30 October 1973.) Accordingly, the DCASD determined that the plaintiff was not qualified as a manufacturer within the meaning of the Walsh-Healey Public Contracts Act and ASPR 12–603.1. (*id.*)

At or about the same time, pursuant to 15 U.S.C. § 637(b)(7), the Small Business Administration made its own investigation and concluded that the plaintiff was "competent as to capacity and credit, to perform the proposed" contract. (SBA Letter dated December 10, 1973). Plaintiff's attorney argued during the hearings that such determination was "conclusive" and "binding" on the Contracting Officer but conceded on the oral argument at the conclusion thereof (and also in one of his briefs) that even after such a determination such Contracting Officer had the right to cancel the RFP. Thus for the purposes of this motion, the Small Business

Administration's determination would not appear to be significant.

In the meanwhile, in or about such time the defendant Contracting Officer reached a decision that the plaintiff did qualify as a manufacturer pursuant to the Walsh-Healey Act. (Contracting Officer's statement dated March 28, 1974, para. 10).

On or about February 1, 1974, however, the Legal Officer of the defendant Contracting Officer apparently received a letter from the Labor Department which caused him to re-evaluate his prior decision and on February 8, 1974 he wrote the plaintiff a letter stating in pertinent part that:

> "Your firm is not an established manufacturer of the particular goods or goods of the general character sought by the Government, nor have you made necessary prior arrangements for space, equipment and personnel to perform the manufacturing operations required for fulfillment of the contract."

The report of Mr. Robert Brown dated October 16, 1973, upon which the defendants Contracting Officer based his conclusions, states in pertinent part with respect to his on-the-site inspection that:

> "None of this (plaintiff's) equipment had the necessary indexing heads to accurately position the roller track for hole drilling and counter bores * * * The equipment necessary to produce the item does not exist in the plant. * * * GSE plans to make a drill fixture to drill the holes and counterbores. GSE does not have the capability to make the planned drill fixture. GSE does not have the capability to manufacture items of this type. * * * Their previous production of items of this type were much smaller in size."

A month later on March 8, 1974, Norman Jacobson, Esq., attorney for the plaintiff, wrote a protest letter to the Department of the Army relying heavily upon the Certificate of Competency issued by the Small Business Administration and arguing that "GSE qualified as a firm newly entering such manufacturing activity since it already has made all commitments and prior arrangements 'for space, equipment and personnel to perform the manufacturing operations required for the fulfillment of the contract'". Mr. Jacobson did not, however, submit any evidence at that time as to what, if any, "commitments and prior arrangements" GSE had made for equipment to perform the proposed manufacturing operations.

Thus, it would appear, at least at this point in time, that the plaintiff did not comprehend the need for more sophisticated equipment to perform the contract than the equipment it had in its premises; a fact (i. e., plaintiff's lack of know-how) on which the government places heavy reliance in its opposition to plaintiff's present motion.

Plaintiff's attorney argued throughout the proceedings that the Army "misled" plaintiff with respect to the basis on which it recommended that the award to the plaintiff should be denied. His contention is that the only basis for such denial was that plaintiff was an "assembler" and not a "manufacturer" within the requirements of the Walsh-Healey Act. While some material submitted to the Contracting Officer prior to his re-evaluation of his original decision may have triggered his second look at the facts, it is difficult to understand how this conclusion could have been drawn from such Officer's aforesaid decision letter of February 8, 1974 *(supra)*.

Moreover, any doubt with respect thereto should have been removed on receipt by the plaintiff on or about April 29, 1974, of a copy of the Army's Administrative Report (Exhibit C) which contained a copy of Mr. Brown's report *(supra)*, and also contained a request for final determination under Walsh-Healey Public Contracts Act through the Commander, U. S. Army Materiel Command, to the Labor Advisor (Major Whitten).

This latter document or request contains the following significant observations:

"The pre-award survey of which he (Jacobsen) speaks reveals that the bidder's technical capabilities, production capability and plant facilities and equipment are unsatisfactory. Section VII, sub-contracting on BD Form 1524–1 (incl 6) indicates that initially the entire job is to be subcontracted out. This is nonqualifying under the latest Walsh-Healey opinion and criteria.

"The pre-award survey indicates the milling machine contractor intends to use appears to be in fair condition, however, it is not adequate to handle roller tracks in the size for this procurement. Survey also states that couplings previously produced (by GSE) are not considered similar nor as complex to produce as the units for this RFP. Bidder's plant facility and equipment are not adequate to produce the units for this procurement, lacking machines for the grinding, facing and milling operations as required."

Apparently even plaintiff must have understood from and after this April 29th date that there was some deficiency in its equipment and production capability. This is shown by a further letter dated May 8, 1974 from Mr. Jacobson to the Department of Labor through the U. S. Army Missile Command in which he points out that the company has now "made commitment to purchase a CIN-TIMATIC TAPE CONTROLLED MILLING & DRILLING MACHINE" which he described as "another item of manufacturing equipment to be used in the primary manufacturing operations of the end item under this RFP".

Even at this point, however, the government maintains that the plaintiff did not fully understand what was required for the production of the roller tracks and the government also argues that the plaintiff's "commitment" was nothing more than a statement of intention to purchase and was not a *bona fide* commitment or arrangement even though it

was denominated a "purchase order" (Exhibit 1A).

There ensued additional correspondence and communications between plaintiff's representatives and various government officials during which time plaintiff apparently learned of its other major deficiency in equipment and issued a second "purchase order" dated July 1, 1974, (Exhibit 1) in a further attempt to correct the same.

In the meanwhile, on June 11, 1974, prior to the submission of Exhibit 1 to the government, Major William M. Whitten, Labor Advisor to the Department of the Army, wrote Mr. Ray J. Dolan, Assistant Administrator of the U. S. Department of Labor, the following letter:

"Reference the administrative file on the above subject which I submitted to you by letter dated 24 April 1974, I am inclosing additional material on the protest.

"Upon consideration of this additional material, the contracting officer affirmed his previous determination of ineligibility under the WHPCA. TAB II. I concur in his decision and find no evidence which rebuts the primary rationale of my recommendation of 24 April 1974, i. e., 'not only that GSE has not produced items of the same general character, but that GSE does not have the capability of performing the portion of the contract not subcontracted. GSE is newly entering into this type of manufacturing activity, and has not made all necessary prior arrangements for equipment to perform the manufacturing operations required for the fulfillment of the contract'.

In his letter of 8 May 1974, Mr. Jacobson invited attention to the four pages of equipment listed as Exhibit #3 to the Protest Letter of 8 March 1974. TAB VII. In this regard, TAB IV contains the following statement by an Army Engineer:

'The list of tooling [Exhibit 3] submitted with the subject letter [Pro-

test Letter dated 8 March 1974] did not contain any additional tooling that the contractor had acquired after the pre-award survey. This list of tooling did not contain adequate tooling or equipment necessary to manufacture the roller track.'

"Mr. Jacobson also makes reference to GSE's 'commitment' to purchase a Cintimatic Tape Controlled Milling and Drilling Machine. While there is no documentation to evidence a binding commitment to purchase this machine, said equipment is not sufficient to give GSE the capability of performing the contract. TAB III.

"I have carefully considered the additional material and, irrespective of 'assembler' considerations, GSE Dynamics, Inc. does not otherwise qualify as a manufacturer within the meaning of the WHPCA. Therefore I affirm my prior recommendation that the contracting officer's determination of ineligibility be upheld."

In reply thereto, Administrator Betty Southard Murphy on August 7, 1974 wrote the following final decision of the Department of Labor:

"This is in reply to your letters of April 24, and June 11, 1974 and enclosed reports requesting our final determination as to whether GSE Dynamics, Inc., Farmingdale, New York, is eligibile for contract award as a manufacturer within the meaning of the Walsh-Healey Public Contracts Act and the regulations issued thereunder.

"We have carefully reviewed all the evidence contained in your reports, including all the information that the firm itself (and through counsel) submitted on its own behalf, and find no reason to question the initial determination of your agency that GSE Dynamics, Inc. is not eligible as a manufacturer within the meaning of the Public Contracts Act and ASPR 12–603.1.

"Specifically, we find from the record that the firm is not an established manufacturer of the *particular goods or goods of the general character sought by the Government* nor, in the alternative, has it made all necessary prior arrangements or commitments for all the equipment to perform the manufacturing operations required for contract fulfillment.

"In reaching our decision, we are particularly persuaded by the findings of fact noted in items No. 4, 6b and d, of General Ellis' report of April 2, 1974, the DCAS Industrial Labor Relations Office Reports of October 30, 1973 and May 16, 1974 and the evidence contained in your correspondence of June 11, 1974. We also wish to note our agreement with your conclusions that a Certificate of Competency issued by the Small Business Administration and the 'Assembler' issue (our opinion letter of June 13, 1973) are not relevant to our decision in this case.

"As you are aware, this Department has consistently given great weight to the technical knowledge and expertise of contracting agency personnel in rendering final eligibility determinations under the Public Contracts Act, and, as a policy, we do not overturn the initial determinations by such agency unless they are arbitrary or capricious or otherwise clearly erroneous."

During the course of the hearings the Court repeatedly urged the plaintiff and its counsel to permit Mr. Brown to inspect the equipment specified in the belatedly submitted Exhibit 1 to determine whether even at this late date the equipment for which plaintiff maintained it has made a "commitment" would have satisfied the Army's requirements. Various excuses were offered during the two-week period of the hearings but the equipment was never made available for inspection, leaving this Court with a substantial doubt in its mind whether any "commitment" or arrangement of

any kind had been made therefor and, of course, the government still has no proof that the same would have performed satisfactorily and met its requirements.

The only question before this Court at this time is whether the plaintiff is entitled to a preliminary injunction restraining the defendants from cancelling the Request for Proposal and directing the defendant Contracting Officer to award the contract under the RFP to the plaintiff.

### Discussion

■ It is well-established law that a plaintiff seeking a preliminary injunction assumes "the burden of demonstrating either a combination of probable success and the possibility of irreparable injury" or that it has "raised serious questions going to the merits and that the balance of hardships tipped sharply in its favor." Stark, Jr., Inc. v. New York Stock Exchange, 466 F.2d 743 (2nd Cir., 1972).

■ Preliminary injunctive relief requires more than a "mere showing that the party seeking relief will see its relative position deteriorate." Sanders v. Air Line Pilots Association, International, 473 F.2d 244, 248 (2nd Cir., 1972).

■ After hearing the testimony of the U. S. Missile Command's technician, R. M. Brown, who participated in the pre-award survey conducted on October 16, 1973, and the testimony of Major William M. Whitten III, Labor Advisor to the Department of the Army, and reading the affidavits and exhibits, the Court is thoroughly convinced that the plaintiff (i) was not and has never been an established manufacturer of the particular goods or goods of the general character sought by the government, and (ii) had not made necessary prior arrangements or commitments for the necessary equipment to perform the manufacturing operations required for contract fulfillment at least until after it had been educated by the government as to what equipment was required. In other words, the plaintiff gave every appearance of not having the technical know-how to fulfill the contract in the sense that it did not appreciate the need for more sophisticated equipment than it had in its premises to perform the contract satisfactorily.

Under the circumstances it is clear that the plaintiff has not met the burden of demonstrating probable success on the merits herein. Moreover, it is difficult to see where plaintiff will be irreparably injured in the event that a preliminary injunction is not granted at this time, provided that no adverse determination is made by this Court with respect to plaintiff's status as a "manufacturer" in a general sense, as distinguished from an "assembler," sheet metal shop, etc. (and none is made at this time) and any denial of its motion be without prejudice to its right to submit later bids to the government for the roller tracks or any other item.

Under the second test indicated above "the burden (of showing probable success) is less where the balance of hardships tips decidedly [for] the party requesting the temporary relief." Dino DeLaurentiis Cinematografica, S.p.A. v. D–150, Inc., 366 F.2d 373, 375 (2nd Cir., 1966). However, in the case at bar upon considering a balance of equities, in terms of injury to the plaintiff if an injunction were denied, as against injury to the defendant if it were granted, the Court finds that such a balancing would tip sharply or decidedly in favor of the defendants not only because of the apparent lack of irreparable injury to the plaintiff but also because of the urgent need of the Army to obtain a qualified manufacturer to produce this essential and integral part of the NIKE-Hercules Missile System. In addition, the Court does not believe that the questions presented in this case are so "substantial and difficult" as to warrant the application of the second test.

Under all of such circumstances and the facts and law herein, the Court feels that there is no basis for the issuance of a preliminary injunction and accordingly

plaintiff's motion therefor is denied and the interim stay is vacated.

During the hearings the government claims it orally cross moved for summary judgment. Plaintiff, however, has not had an adequate opportunity to address itself to such motion and may (or may not) wish to maintain its present action to preserve whatever position it may have with respect to any further bidding on (or any contract which may be awarded for) the roller tracks or any other items. Accordingly, the Court declines to pass on such motion in its present form without prejudice to defendants' right to renew the same on proper notice and papers at a future date if they desire so to do.

So ordered.