CLEVER IDEA COMPANY, INC., and Jet
Industries, Inc., Plaintiffs,

v.

CONSUMER PRODUCT SAFETY COM-
MISSION et al., Defendants.

No. 74 C 1638.

United States District Court,
E. D. New York.

Dec. 4, 1974.

Aberman, Greene & Locker, New York
City, for plaintiffs.

David G. Trager, U. S. Atty., by Pam-
ela C. McGuire, Asst. U. S. Atty., for
defendants.

## OPINION

PLATT, District Judge.

Plaintiffs seek a preliminary injunc-
tion against the defendants restraining
them from the enforcement of Regula-
tion 16 CFR 1500.18(a)(2) and defend-
ants' banning Orders dated January 11,
1974 and August 23, 1974 issued there-
under and any other banning orders
promulgated thereunder relating to
plaintiffs' products.

On November 19, 1974, after hearing
counsel for all parties, this Court issued
a temporary restraining order granting
plaintiffs the aforesaid relief pending
its determination of this motion.

In their complaint for declaratory
judgment and injunctive relief plaintiffs
allege that the jurisdiction of this Court
is based upon: (i) 28 U.S.C. § 1331(a)
pertaining to civil actions arising under
the Constitution, laws or treaties of the
United States wherein the amount in
controversy. exceeds the sum or value
of $10,000 exclusive of interest or costs
and (ii) 28 U.S.C. § 1337 pertaining to
civil actions arising under any Act of

Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

The venue is proper, the plaintiffs claim, because one of the plaintiffs resides in this District and each defendant is an officer or employee of the United States or an agency thereof and no real property is involved in the action.

## THE STATUTE

The statute involved is the Federal Hazardous Substances Act, 15 U.S.C. § 1261 et seq., and the regulation of the risks of injury thereunder has, with the enactment of the Consumer Product Safety Act on October 27, 1972, been transferred from the Secretary of H.E.W. to the defendant Commission herein.

Section 1261(f)(1)(D) of the Federal Hazardous Substances Act provides that:

"(f) The term 'hazardous substance' means:

\*　　\*　　\*　　\*　　\*　　\*

"(D) Any toy or other article intended for use by children which the Secretary by regulation determines, in accordance with section 1262(e) of this title, presents an electrical, mechanical, or thermal hazard."

Section 1261(s) of such Act provides that:

"(s) An article may be determined to present a mechanical hazard if, in normal use or when subjected to reasonably foreseeable damage or abuse, its design or manufacture presents an unreasonable risk of personal injury or illness (1) from fracture, fragmentation, or disassembly of the article, (2) from propulsion of the article (or any part or accessory thereof), (3) from points or other protrusions, surfaces, edges, openings, or closures, (4) from moving parts, (5) from lack or insufficiency of controls to reduce or stop motion, (6) as a result of self-adhering characteristics of the article, (7) because the article (or any part or accessory thereof) may be aspirated or ingested, (8) because of instability, or (9) because of any other aspect of the article's design or manufacture."

Section 1262(e) of the Act provides that:

"(1) A determination by the Secretary that a toy or other article intended for use by children presents an electrical, mechanical, or thermal hazard shall be made by regulation in accordance with the procedures prescribed by section 553 (other than clause (B) of the last sentence of subsection (b) of such section) of Title 5 unless the Secretary elects the procedures prescribed by subsection (e) of section 371 of Title 21, in which event such subsection and subsections (f) and (g) of such section 371 of Title 21 shall apply to the making of such determination. If the Secretary makes such election, he shall publish that fact with the proposal required to be published under paragraph (1) of such subsection (e).

"(2) If, before or during a proceeding pursuant to paragraph (1) of this subsection, the Secretary finds that, because of an electrical, mechanical, or thermal hazard, distribution of the toy or other article involved presents an imminent hazard to the public health and he, by order published in the Federal Register, gives notice of such finding, such toy or other article shall be deemed to be a banned hazardous substance for purposes of this chapter until the proceeding has been completed. If not yet initiated when such order is published, such a proceeding shall be initiated as promptly as possible."

## THE REGULATIONS

Pursuant to the aforesaid Act, and on or about December 17, 1970, the Commissioner of Food and Drugs, under authority of the Secretary of H.E.W., issued Regulation 21 CFR 191.9a(a)(3)

which is now known as 16 CFR 1500.18 (a)(2) and which reads as follows:

"§ 191.9a. Banned toys and other banned articles intended for use by children

(a) Toys and other children's articles presenting mechanical hazards. Under the authority of section 2(f)(1)(D) of the act, and pursuant to provisions of section 3(e) of the act, the Commissioner has determined that the following types of toys or other articles intended for use by children present a mechanical hazard within the meaning of section 2(s) of the act because in normal use or when subjected to reasonably foreseeable damage or abuse, the design or manufacture presents an unreasonable risk of personal injury or illness: * * *

* * * * * *

"(2) Any toy having noisemaking components or attachments capable of being dislodged by the operating features of the toy or capable of being deliberately removed by a child, which toy has the potential for causing laceration, puncture wound injury, aspiration, ingestion or other injury."

## THE FACTS

Plaintiff Clever Idea Company, Inc. ("Clever") is a New York corporation with its principal place of business at 117 Concord Street, Brooklyn, New York, and plaintiff Jet Industries, Inc. ("Jet") is a Connecticut corporation with its principal place of business at 114 Manhattan Street, Stamford, Connecticut.

Plaintiff Clever's president testified that Clever had been producing paper and blow-out horns with plastic mouthpieces for "almost 30 years" and that during such time Clever had never received any type of complaint nor had it ever been sued in any court for any claimed defects. During this period Clever distributed approximately two million of such mouthpieces per year for a total of approximately sixty million mouthpieces.

Plaintiff Jet's president testified that his company had been distributing approximately a quarter of a million mouthpieces per year for the past ten years and during such period they had never received a complaint with respect to any of such products.

The plaintiffs called two witnesses from the Bureau of Compliance, the defendants called a Director of the Division of Hazard Evaluation of the Consumer Products Safety Commission and all of them admitted that the government had never received a complaint with respect to any of plaintiffs' products and that they knew of no such complaint even after their investigations of the plaintiffs. One of the government employees was Ms. H. Elizabeth Jones about whom more is set forth below.

In the case of Clever, it has distributed a standard type of mouthpiece from the early 1950s up until January, 1974. In the latter month the Toy Manufacturers of America proposed a voluntary standard which called for the use of a new mouthpiece which is "tougher to bite through" with an increased rubber compound mixed with polystyrene and the plaintiff adopted such standard and has been distributing such "tougher" mouthpieces since said date.

According to the government employees who testified, the Regulations in question were first promulgated in December of 1970 and between such date and 1973 the Food and Drug Administration applied various tests, other than a bite test, to determine the safety of the toys and no adverse determinations were made with respect to plaintiffs' products.

About a year ago the Commission began using the so-called "bite test" in question herein. According to Mr. Van Houten, a Consumer Product Safety Commission Chemical Engineer, in approximately June of 1972 his supervisor, being "aware of a report that had been conducted by anthropologists", suggested that Mr. Van Houten devise a system to accomplish a bite test which he

did and after curing various deficiencies therein developed "an improved bite test" which the Commission began using last year.

The government, however, frankly admits that it never told the plaintiffs or any other toy manufacturers that it was using the bite test and to date has never promulgated such test as an official test.

In and about December 1972 the Commission did publish certain proposed test methods for simulating use and abuse (37 FR 26120), which apparently include descriptions of the so-called "bite test" but such regulations have not, as yet, been promulgated or adopted.

In June of 1973, under the supervision of Ms. H. Elizabeth Jones (see *supra*) the plaintiff Clever's toys were subjected to a number of tests and apparently failed the proposed "bite test". For that reason Ms. Jones wrote a letter dated June 11, 1974 addressed to Clever in which she stated that the subject toys "present a mechanical hazard within the meaning of the Federal Hazardous Substances Act and Regulation 1500.18 (a)(2)" and that they have the potential for causing laceration, puncture wound injury, aspiration, ingestion or choking, in that the mouthpiece of each toy can be bitten through during normal use or reasonably foreseeable damage or abuse exposing small pieces and sharp edges. From this she concluded that they were "banned hazardous substances" under the Act.

The same conclusion based on the same reasons was given by Ms. Jones in banning similar toys distributed by the plaintiff Jet in her letter dated August 23, 1974.

Not only were plaintiffs' products thus banned but Ms. Jones directed that, under the provisions of Regulation 16 CFR 1500.202, the plaintiffs were "to repurchase banned articles from each person to whom you have sold them" and "to notify each distributor, dealer or other person to whom you have sold a banned article that it is a banned, hazardous substance subject to repurchase under the Act" and stated that plaintiffs' products "will appear for the first time in the October 1974 edition of the banned products list and threatened the plaintiffs with "penalties" and with "seizures where appropriate".

The effect of such action by the Commission was, according to plaintiff Clever's president, "disastrous" not only in terms of decreases in sales but in ever increasing amounts of returns of product from regular customers at the plaintiffs' busiest time of year. The damage, of course, to plaintiffs' good will and reputation is inestimable.

The defendants called a learned anthropologist, Dr. Wilton Marion Krogman, who has spent a remarkable lifetime in the study of the growth and development of children and in particular their face jaws.

In response to a request by the Glass Manufacturers Institute of America, Dr. Krogman created a machine which would measure the biting strength of children, three to six years of age, and conducted tests on a great many black and white children on the east and west coasts of this country to determine the average and range of the force of their bites. Under instructions to bite "hard", children of the given ages clamped their teeth togther for a fraction of a second and registered in many instances in excess of 100 pounds of force on the scale annexed to Dr. Krogman's machine.

Dr. Krogman recorded his findings in a treatise (Exhibit B) and the Commission relied thereon in the development of their bite machine and test which is described in the proposed Regulations as follows:

"(c) Bite test—(1) Application. A toy (or component) that is a mouth toy shall be subject to this test.

"(2) Test equipment—(i) Contact mechanism. The contact mechanism shall be two metal strips each one thirty-second inch thick. The strips shall be circular or semicircular in shape with a 1½-inch diameter and

a ½-inch height. The edges thereof shall be rounded to a radius of one sixty-fourth inch. (See Figure 1 in § 191.21.)

"(ii) Loading device. The loading device shall consist of two metal plates capable of rigidly holding the contact mechanism (see subdivision (i) of this subparagraph and Figure 1 in § 191.-21) and applying a force of 100 pounds.

"(3) Testing procedure. The toy shall be placed in the loading device in any reasonable position utilizing not more than 180° of the arc and a test load increasing to 100 pounds over 5 seconds shall be applied. This load shall be maintained for 10 seconds."

On cross examination, Dr. Krogman conceded that the government's bite machine was not as good a simulator of a child's bite as an actual set of teeth set in a properly molded jaw hooked up to an appropriate machine might be. The principal difficulty with the government's machine apparently lies in the fact that its metal strips clamp together in an exact horizontal or vertical plane, whereas, of course, human teeth do not so clamp. A second problem with the Commission's procedures, insofar as Dr. Krogman's tests are concerned, is that the Commission's testing procedures call for "test load increasing to 100 pounds over 5 seconds * * * this load shall be maintained for 10 seconds", whereas Dr. Krogman's test was for a fraction of a second or an almost instantaneous clamp and reopening. The testimony also indicated that the edges of the machine "rounded to a radius of one sixty-fourth inch" may not have been anything like a human tooth.

As hereinafter indicated, these differences appear to be significant and material.

## QUESTIONS

The question is whether as a matter of law the defendants may ban plaintiffs' toys on the ground that they failed to pass the defendants' proposed, but unadopted, bite test. If so, then the question is whether plaintiffs' products in normal use or when subjected to reasonably foreseeable damage or abuse present an unreasonable risk of personal injury from fracture or fragmentation or because the articles may be aspirated or ingested. If the plaintiffs have sustained the burden of demonstrating either a combination of probable success on either of these questions and the possibility of irreparable injury, or if they have raised serious questions going to the merits and the balance of hardships tips sharply in their favor, then they are entitled to the preliminary injunction which they seek; if not, then their application therefor must be denied.

## DISCUSSION

█ It is well established law that a plaintiff seeking a preliminary injunction assumes "the burden of demonstrating either a combination of probable success and the possibility of irreparable injury" or that it has "raised serious questions going to the merits and that the balance of hardships tip sharply in its favor". Stark v. New York Stock Exchange, 2 Cir., 466 F.2d 743; Moore v. Kibbee, 381 F.Supp. 834 (E.D.N.Y.1974); GSE Dynamics, Inc. v. John Doe, et al., 381 F.Supp. 1088 (E.D.N.Y.1974).

█ The possibility of irreparable injury to the plaintiffs in this case is, for all practical purposes, undisputed. The Commission has listed plaintiffs' products in the October 1974 edition of the "Banned Products List" and given the same wide circulation with the result that large quantities of plaintiffs' products are being returned with demands for repayment and large renewal orders are not being placed with the plaintiffs by their regular customers. In addition, plaintiffs' good will and reputation have unquestionably been irreparably injured.

With respect to the question of probable success on the merits, there can be

no real dispute as to the question of whether plaintiffs' banned products "presents an unreasonable risk of personal injury" by reason of "normal use" because over a period of almost 30 years the plaintiffs collectively have distributed in excess of sixty million mouthpieces and there has never been a recorded defect or complaint.

Thus the only question is whether such mouthpieces "when subjected to reasonably foreseeable damage or abuse * * * present an unreasonable risk of personal injury".

Before reaching the factual questions thus posed the plaintiffs have urged the Court to consider the question of whether as a matter of law the defendants may ban plaintiffs' toys on the ground that they failed to pass their proposed, but as yet unadopted, bite test. In essence, the plaintiffs' argument is that before making a determination that plaintiffs' toys were "mechanical hazards" on the bite test ground, the Commission was required under 15 U.S.C. § 1262(e)(1) to adopt a "regulation in accordance with the procedures prescribed by Section 553" of Title 5.

Such Section 553, which concededly has not been complied with as to the proposed bite test regulation, provides for "'general notice of proposed rule making' in the Federal Register at least thirty days before the effective date of the proposed rule and further requires that the (Commission) afford interested persons 'an opportunity to participate in rule making through submission of written data, views or arguments with or without opportunity for oral presentation'" (Pharmaceutical Manufacturers Association v. Finch, 307 F.Supp. 858, 862, 863 (D.C.Del.1970), and the publication of the rule when and as the same is adopted.

Defendants' contention that they adequately complied with such Section insofar as plaintiffs' products are concerned when they adopted 16 CFR 1500.18(a)(2) is questionable from the start for if their contention were true one might naturally ask why they had proposed the new Regulations published in 37 FR 26120.

The fact is that the Regulation adopted to date (16 CFR 1500.18(a)(2)) in part merely "parrots" the statute and in the remaining applicable part (sub para. 2) might well be deemed inapplicable to the toys in question.

Although perhaps susceptible of different interpretations, subparagraph 2 of Section 1500.18(a) of the adopted Regulation appears to cover only those toys which have a potential for causing injury by reason of noise making components which are capable of being dislodged.

Such, of course, is not the case nor the contention here but rather that the plaintiffs' toys might cause injuries by reason of the fact that they might be bitten and fragmented and thus pose a threat of injury.

Plaintiffs argue further that the "normal use" and "reasonably foreseeable" language in paragraph (a) of Section 1500.18 does not provide a "regulation" for a "determination" by the Commission under Title 15 U.S.C. § 1262 (e)(1) because the same language is contained in the definition of a mechanical hazard in 15 U.S.C. § 1261(s) and therefore the banning orders of the Commission are "in excess of statutory jurisdiction, authority or limitations, or short of statutory right" and/or "without observance of procedure required by law" under 5 U.S.C. § 706(2)(C) and (D).

Defendants on the other hand urge that this portion of the Regulation was duly adopted pursuant to the provisions of 5 U.S.C. § 553 and they are entitled to prove by any evidence (including such tests as a bite test) that a product may not meet the language requiring products to withstand reasonably foreseeable damage or abuse without presenting "an unreasonable risk of personal injury".

Plaintiffs rely on the case of Pharmaceutical Manufacturers Association v. Finch, 307 F.Supp. 858 (D.C.Del.1970) wherein plaintiff argued that certain

proposed regulations were "invalid because they were issued without notice and opportunity for comment in violation of the requirements of Section 4 of the Administrative Procedures Act, 5 USC § 553." (at page 862). In that case the Court said, *inter alia*, (307 F. Supp. at p. 864):

"The September regulations, which prescribe in specific detail, for the first time, the kinds of clinical investigations that, will be deemed necessary to establish the effectiveness of existing and future drug products and which require that such evidence be submitted as a condition to avoiding summary removal from the market, are pervasive in their scope and have an immediate and substantial impact on the way PMA's members subject to FDA regulation, conduct their everyday business. The regulations apply to more than 2000 drug products first marketed between 1938 and 1962 with FDA approval and place all of them in jeopardy, subject to summary removal by order of FDA.

"The all pervasive and substantial impact which the September regulations have upon the drug industry and in turn upon prescribing physicians and their patients, makes it imperative that the Commissioner comply with the notice and comment provisions of Section 4 before such regulations become effective.

*   *   *   *   *   *

". . . Thus, the Commissioner concludes that the only effect of the September regulations was to 'particularize' the statutory standard.

"Despite this argument, the record is clear that the administrative practice applying the statutory standard to drugs marketed before 1962 has not uniformly insisted on evidence produced in accordance with the carefully controlled testing requirements of the September regulations."

Similarly, in the case at bar, the proposed Regulations "prescribe in specific detail, for the first time" the kinds of

tests which will be deemed necessary to establish the trustworthiness of existing and future mouthpieces. The Regulations apply to more than two million of plaintiffs' mouthpieces per year and "place all of them in jeopardy, subject to summary removal by order of" the Commission.

Again "the all pervasive and substantial impact which the (proposed Regulations have upon plaintiffs') industry *   *   * make it imperative that the (Commission) comply with the notice and comment provisions of Section 4 (5 USC § 553) before such Regulations become effective."

And again "the record is clear" that prior to 1973, tests other than the so-called bite test were applied to determine compliance with the statutory standard.

As plaintiffs say, it is difficult, without completely ignoring the holding of the Court in that case, to reach a conclusion different from the result reached there.

Moreover, the Court is not satisfied that plaintiffs' banned products, Exhibits A and K, have been shown to "present an unreasonable risk of personal injury *   *   * when subjected to reasonably foreseeable damage or abuse." Some of the samples in Exhibits A and K withstood the 100 pound bite test procedures proposed by the Regulations, and others withstood loads ranging between 64 pounds and 100 pounds. It is true that more recent products of the plaintiff JET which the government also proposes to ban (Exhibits B and C) withstood pressures of only 10 to 33 pounds but nonetheless history is on the plaintiffs' side and the differences (outlined above) between defendants' bite machine and the human bite are of significance.

The aforesaid differences between the bite machine and the human bite, of course, raise considerable doubt about the efficacy of the Commission's machine.

In addition, the Court finds it difficult to believe that the plaintiffs' prod-

ucts withstood so many years of normal child use, damage and abuse without one single complaint or alleged defect if they really do constitute a hazardous item or present an unreasonable risk of personal injury as the government contends.

Finally, perhaps it should be noted that even Dr. Krogman admitted that his experience with toys such as those distributed by the plaintiffs indicated that a child's use thereof was rather limited —"the kids blew them. By the end of the meal, combination of their own saliva and frequent insertation into their mouths, the object was worn" and concededly they "usually went out to the trash with the rest of the cake."

The defendant also called a Dr. Howard C. Mofenson who professed to be something of an accident prevention expert with respect to toys and related children's gifts. While the Court does not question Dr. Mofenson's credentials, his conclusions, if adopted, would go a long way toward eliminating Santa Claus from Christmas, the Easter bunny from Easter, Good Humors and lollipops from birthday parties, etc., and the Court is not convinced that even the government is prepared to go so far.

On balance, the Court feels that Congress with its usual wisdom prescribed the right road for the Commission to follow before applying the proposed bite test, namely, to comply with the notice and comment provisions of 5 U.S.C. § 553. In light of Dr. Krogman's testimony, further modifications of the bite machine might well be in order prior to the adoption of the proposed Regulations and members of the industry would then be in a position at least to know that if their products failed to measure up to an adopted (as distinguished from a proposed) standard, they might be exposed to all of the risks and penalties prescribed in the statute. Elemental principles of fairness would seem to dictate that this be done in this case. For the foregoing reasons, plaintiffs' application for a preliminary injunction is granted.

Settle order on notice.