**DINO DeLAURENTIIS CINEMATO-GRAFICA, S.p.A., Plaintiff-Appellee,**

**v.**

**D–150, INC., Defendant-Appellant.**

**No. 474, Docket 30746.**

United States Court of Appeals Second Circuit.

Argued Aug. 30, 1966.

Decided Sept. 16, 1966.

Sidney A. Florea, New York City (Anthony G. DiFalco, Irving Brown, Norman S. Freiberger, New York City, on the brief), for plaintiff-appellee.

Herbert M. Wachtell, New York City (George A. Katz, Theodore Gewertz, Bernard W. Nussbaum, Elizabeth Holtzman and Wachtell, Lipton, Rosen, Katz, & Kern, New York City, on the brief), for defendant-appellant.

Before WATERMAN, SMITH and FEINBERG, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

In this declaratory judgment action on a contract to use appellant's equipment in production of motion picture, appellant counterclaimed seeking *inter alia* to enjoin roadshow exhibition of a motion picture except in appellant's D–150 process, and moved for injunction *pendente lite,* which the District Court for the Southern District of New York, Harold R. Tyler, Jr., District Judge, denied. The appeal is before us under 28 U.S.C. § 1292(a) (1). We hold that a sufficient showing was made to require issuance of an injunction *pendente lite* on posting of an adequate bond to indemnify plaintiff-appellee from loss.

Appellant, owner of a process for filming and showing motion pictures with the use of a single projector on a deeply curved wide theatre screen, furnished its filming equipment to plaintiff, a producer, for the filming of "The Bible," under an agreement which the appellant contends requires the roadshow showing of the picture in the major United States and European theatres only in the D–150 process, with limited stated exceptions, the producer to pay rental plus royalties.

For reasons which are in dispute, the producer fell behind on the equipment rental payments and brought this action in the state court for interpretation of the contract to forestall repossession of the equipment before completion of the picture. Appellant counterclaimed for performance of the agreement and injunction against showing other than in the D–150 process. A codefendant, Todd-AO Corp., a New York citizen for jurisdictional purposes, was dropped as a party, and appellant promptly removed to the District Court for the Southern District of New York. The picture has been completed and is scheduled to open September 28 in New York, in ordinary 70 mm. projection. (The filming equipment used is "compatible"—that is, the picture may be projected either in D–150 or ordinary 70 mm.). Because of a shortage of judicial manpower in the Southern District of New York it has been impossible to schedule the case for trial as yet, although a pre-trial order was entered on March 30, 1966, and three successive motions for preference were made by appellant.

With the case in this posture, the District Court denied preliminary injunction for several reasons, first, that plaintiff had divested itself of ownership of the film before the contract with appellant, which the court assumed *arguendo* was effective, was entered into, second, that the chronology of the litigation places a heavier burden than usual upon the movant, third and principally, failure of the movant to establish irreparable harm, fourth, doubt of success on trial on the principal issue, duty to release in D–150, fifth, that the contract itself establishes a sufficient basis for ultimate relief in damages, sixth, that the temporary relief sought would in effect alter rather than preserve the status quo and would give the movant all the eventual relief sought, and finally, doubt as to the efficacy of the relief if given.

In order to reverse the trial judge's denial of the motion for a preliminary injunction, a clear abuse of discretion must be shown. Ideal Toy Corp.

v. Fab-Lu Ltd., 360 F.2d 1021 (2d Cir. 1966). The District Court must have erred in its decision that the moving party had not made "a clear showing of probable success and possible irreparable injury." Societe Comptoir de L'Indus. v. Alexander's Dept. Store, Inc., 299 F.2d 33, 35 (2d Cir. 1962). However, the weight to be given the probability of success is not precisely the same where other factors differ. While the party seeking a preliminary injunction has a burden of convincing with a reasonable certainty that it must succeed at final hearing where it appears that a lack of showing of irreparable damage also exists, the burden is less where the balance of hardships tips decidedly toward the party requesting the temporary relief. The likelihood of success is "merely one strong factor to be weighed along with the comparative injuries of the parties." Unicon Management Corp. v. Koppers Company, Inc., 366 F.2d 199, 2d Cir., September 7, 1966, quoting from 3 Barron & Holtzoff, Federal Practice and Procedure, § 1433 at 493.

■ We do not here pass upon the ultimate questions which are for trial on the merits. We do, however, hold that movant's showing was a sufficiently clear showing of probable success and possible irreparable injury, with no consequent irreparable injury to plaintiff if the preliminary injunction is granted, to require the exercise of the court's discretion to preserve the status quo by preventing the exhibition of the picture in violation of the claimed contract pending the resolution of the issues on trial.

Appellant has submitted sufficient material to show probable success of proving a contract with appellee which would require the exhibition of "The Bible" by the D–150 process. The parties started early in 1964 to negotiate about financing, licensing and distributing the film. The financing and distribution negotiations not having succeeded, on May 8 the parties agreed to some sort of a licensing arrangement. (* * * "Naify

drafting D–150 licensing contract independent from Bible financing distribution deal * * * if Bible financing and distribution agreements concluded, licensing contract to be modified to add * * *." Appellant's Exh. A, A [1] 210–214.) On May 11, appellee started to photograph with appellant's equipment and soon added

> Only D–150 the new dimension in motion pictures, is great enough for The Bible—

to the Times Square billboard which for a long period has been advertising the picture. Appellee's American publicity director had been instructed not to mention D–150 until the "deal is made." (Appellant's Exh. F, A 235.) Also, there are documents which show that appellee considered the May 8 cable an agreement. (Appellant's Exh. O, A 254, Exh. P, A 255.) Thus, it is clear that appellee contracted for and used appellant's equipment. That much is admitted by the institution of suit by appellee to declare the existence of a contract. Also, it is clear that the key element of the D–150 process is the screening and not the filming. (Appellant's Exh. Q, A 258–265.) From this, it may be found that the parties intended plaintiff to exhibit the film by the D–150 process. This conclusion is reinforced by statements in press releases (Appellant's Exh. S, A 283, Exh. T, A 296–297), and a brochure (Appellant's Exh. U, A 299).

It may be that as far as lost royalties are concerned, money damages are fully compensatory, although appellant contends that they would not be collectible. However, the damages claimed here are not limited to lost royalties. For, the defendant seeks also to recover losses resulting from denial of the opportunity to launch the D–150 process with "The Bible" and from any industry confusion, loss of reputation and credibility. Certainly, this sum is not as readily calculable as lost royalties and issuance of a preliminary injunction may be called for when damages are difficult to compute.

---

[1]. "A" refers to Appellant's Appendix.

Such difficulty is especially common when damage to reputation, credibility or good will is present. L. C. Page & Co. v. Fox Film Corp., 83 F.2d 196 (2d Cir. 1936), Inge v. Twentieth Century-Fox Film Corp., 143 F.Supp. 294 (S.D.N.Y. 1956), Pepsi-Cola Co. v. Billy Rose's Exposition Spectacles, Inc., 14 N.Y.S.2d 301 (Sup.Ct. Queens Co. 1939), Granz v. Harris, 198 F.2d 585 (2d Cir. 1952), Black & Yates, Inc. v. Mahogany Ass'n, Inc., 129 F.2d 227, 148 A.L.R. 841 (3d Cir.), cert. denied 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942), Martin v. Reynolds Metal Co., 224 F.Supp. 978 (D.Or.1963), appeal dismissed 336 F.2d 876 (10th Cir. 1964).

The affidavits on file showed a heavy dissemination of notice to the industry and to the public of the plan to exhibit this spectacular film in the D–150 process, and irreparable damage to the reputation of the new process by the proposed unexplained abandonment, a damage not readily measurable merely by the loss of royalty on the showing of the picture in issue, but bound to affect acceptance of the D–150 process and royalty possibilities from other prospective customers. The additional cost of D–150 installation in theatres is small, can be fully covered by bond, and use of the process is not shown to damage in any way the quality and desirability of the exhibition. Appellant has met the requirements of our rule that " 'it will ordinarily be enough that the plaintiff [defendant here] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation,' where, as here, 'the balance of hardships' tips decidedly toward the party requesting the temporary relief." Unicon Management Corp. v. Koppers Company, Inc., supra.

The apparent divestiture of title to the film to the financial institutions would not seem an insuperable obstacle to effective injunctive relief. Appellee argues that its April 2, 1964 contract which granted Thalia, an allegedly unrelated company, all distribution rights in "The Bible" and Thalia's subsequent subcontract with Twentieth Century-Fox means that the District Court is powerless to issue an order against appellee concerning the showing of the film by D–150. Appellant answers that under Rule 65(d) an injunction can bind the parties and persons "in active concert or participation with them." To this, appellee replies that there was no evidence of concert or participation between Thalia and appellee.

To the contrary, there is some evidence looking toward identity or concert of Thalia and Twentieth Century-Fox with appellee. First, there is the contractual provision by which Fox agreed to show the film in the D–150 if the court determined that appellee had to. (Appellee's Exh. G, A 536.) Second, there is some evidence in the Thalia contract that appellee reserved the right to approve any distribution contract entered into by Thalia. (Appellee's Exh. A, A 368.) Third, appellee conducted all arrangements and negotiations for the distribution of the film. (Wachtell Affidavit, A 173). Thus there is some showing of concert and participation. Even if the transfer was more than one for security purposes, it appears as we have indicated that the eventual distributor has contracted to abide by any final court determination of the matter.

In regard to the chronology of the litigation, it is not apparent why a heavier burden than usual should have been placed on the movant. The case was originally brought in state court, where preference was possible and temporary injunctive relief was denied. Promptly upon the dropping of another defendant as to whom diversity did not exist, movant removed to federal court, proceeded diligently with discovery and pre-trial preparation, and was denied repeated applications for assignment for trial only because of a shortage of available judges.

We do not, of course, pass on the merits of the claimed Clayton Act anti-trust defense, which appears neither in the pleadings nor the pre-trial order. If the court sees fit to permit amendment, it may be

tried below and become ripe for consideration on appeal. See 3 Moore Federal Practice, 2d Ed. 1964 ¶ 15.11.

While, as indicated above, we do not pass on the ultimate questions for trial, and while on full development of the facts on plenary trial either party may prevail, movant's claim of a contract has substantial support in the affidavits on file and in plaintiff's own pleadings before its change of counsel and its resultant change of analysis of its legal position and its consequent denial that any contract existed. On the record before us we conclude that there is a sufficient showing of probable success on trial and of possible and likely irreparable injury to appellant, and a lack of likelihood of irreparable injury to plaintiff if the preliminary injunction is granted. We reverse the denial of injunction *pendente lite* and have ordered its issuance on the filing by appellant of sufficient bond with surety.