473 F.2d 244
 82 L.R.R.M. (BNA) 2023, 69 Lab.Cas. P 13,209
 Leland SANDERS, on behalf of himself and all other flight
engineers in the service of Slick Airways, Inc.,
as of September 5, 1961, similarly
situated, Petitioner-Appellant,
v.
AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, and Airlift
International, Inc., Respondents-Appellees.
 No. 296, Docket 72-1878.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 28, 1972.
Decided Dec. 4, 1972.
 
 Jonathan S. Liebowitz, New York City, for petitioner-appellant.
 Stephen B. Moldof, New York City (Edward R. Curtin, and Cohen, Weiss & Simon, New York City, on the brief), for respondent-appellee Air Line Pilots Association, International.
 James B. Rhoads, Atlanta, Ga. (Fisher & Phillips, Atlanta, Ga., on the brief), for respondent-appellee Airlift International, Inc.
 Before HAYS, OAKES and TIMBERS, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 This appeal arises from the denial of a motion for a preliminary injunction sought by appellant on behalf of a group of senior employees in an action involving a labor dispute with both their employer and formal bargaining representative.
 
 
 2
 After a hearing in the District Court for the Southern District of New York, John M. Cannella, District Judge, an order was entered (1) denying appellant's motion for a preliminary injunction which sought to enjoin appellee Air Line Pilots Association, International, from breaching its statutory duty of fair representation, 45 U.S.C. Sec. 151 et seq. (1970), and appellee Airlift International, Inc. from effecting changes in appellant's seniority rights; and (2) modifying an earlier order which had stayed processing of a related grievance.
 
 
 3
 Under Fed.R.Civ.P. 65(d) and the traditional requirements for determining whether a preliminary injunction should issue, we affirm that portion of the order relating to appellant's motion, and modify that part relating to the stay of the collateral grievance.
 
 I.
 Background Facts
 
 4
 In 1961, an agreement was entered into between Slick Airways, Inc. (Slick), 15 of its senior flight engineers (the Grandfathers), and the Air Line Pilots Association, International (ALPA), the latter being the recognized representative of all of Slick's flight employees. Included in the agreement was a provision that the Grandfathers (the class represented by appellant here) would have job rights over all other Slick employees. To handle disputes, a Joint Grievance Board was established, consisting of one representative each of Slick, ALPA, and the Grandfathers. Binding arbitration was to follow any non-unanimous decision of the Board.
 
 
 5
 In 1966, Slick merged with Airlift International, Inc. (Airlift). Subsequent events indicated that both Airlift and ALPA (the representative of Airlift's, as well as Slick's, flight employees) interpreted the 1961 agreement in light of the merger as giving the Grandfathers job rights vis-a-vis former Slick employees only, with seniority to be measured from the date of the merger rather than the date of employment by Slick. Beginning in 1971, the Grandfathers sought to bring this matter before the Joint Grievance Board in accordance with the 1961 agreement. Both ALPA and Airlift refused, contending that the merger had extinguished the Joint Grievance Board and had established in its place the System Board of Adjustment. This latter body had no separate Grandfather representation. Upon the continuing refusal of ALPA to appoint a representative to the Joint Grievance Board (Airlift eventually having done so), the Grandfathers served a demand for arbitration under New York law. N.Y.Civ.Prac.Law Sec. 7503 (McKinney 1963). A petition to compel arbitration was filed in the state court on June 28, 1971. The case subsequently was removed to the Southern District of New York.
 
 
 6
 In the ensuing months, a new "base bid award" was made (under which all available jobs were re-assigned on a seniority preference basis), despite an alleged agreement between ALPA and the Grandfathers to abstain from such a procedure pending arbitration of the Grandfathers' grievance. The base bid award purportedly resulted in a significant deterioration of the Grandfathers' rights and relative position.
 
 
 7
 The Grandfathers moved in the district court for a preliminary injunction enjoining (1) the processing by appellees of a certain related grievance,[1] (2) the breach by ALPA of its duty of fair representation under the Railway Labor Act, 45 U.S.C. Sec. 151 et seq. (1970), and (3) the effecting by Airlift of changes in the Grandfathers' seniority rights. On June 22, 1972, the district court entered an order granting a stay of the processing of the related grievance and denying the remainder of the motion. The court on July 18, 1972 modified the provision of its order which stayed the processing of the related grievance to a "stay until such time as the judge who is assigned the case passes on it."
 
 II.
 Specificity Requirement of Rule 65(d)
 
 8
 Fed.R.Civ.P. 65(d) provides that "[e]very order granting an injunction . . . shall be specific in terms [and] shall describe in reasonable detail . . . the act or acts sought to be restrained . . . ." The preliminary injunction sought by appellant, if granted, would enjoin ALPA from breaching its duty of fair representation and Airlift from effecting changes in the seniority rights of appellant. ALPA and Airlift contend that such provisions of the injunctive order sought would contravene Rule 65(d). We agree.
 
 
 9
 We turn first to the effect of the proposed preliminary injunction upon ALPA. ALPA's duty of fair representation arises under the Railway Labor Act of 1934, 45 U.S.C. Sec. 151 et seq. (1970), made applicable to air carriers by 45 U.S.C. Sec. 181 (1970). Conclusively within that duty is the requirement that various groups within a bargaining unit be treated equally; "it is not proper for a bargaining agent in representing all of the employees to draw distinctions among them which are based upon their political power within the union." Ferro v. Railway Express Agency, Inc., 296 F.2d 847, 851 (2 Cir.1961). The question is thus presented whether this established duty would make it sufficiently clear to ALPA exactly what would be required of it should the preliminary injunction issue.
 
 
 10
 The normal standard of specificity is that the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden. Brumby Metals, Inc. v. Bargen, 275 F.2d 46, 49 (7 Cir.1960). See also International Longshoremen's Assoc., Local 1291 v. Philadelphia Marine Trade Assoc., 389 U.S. 64 (1967). As the Supreme Court noted in the International Longshoremen's case, Rule 65(d) reflects Congress' concern with the dangers inherent in the threat of a contempt citation for violation of an order so vague that an enjoined party may unwittingly and unintentionally transcend its bounds. 389 U.S. at 76. The relief requested here creates precisely that danger. While the Railway Labor Act and the cases under it have provided certain general guidelines within the rubric "duty of fair representation", e. g., Steele v. Louisville & N. R.R., 323 U.S. 192 (1944); Ferro v. Railway Express Agency, Inc., supra, the standard in any particular case necessarily must embrace the " 'wide range of reasonableness [that] must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion' ". Gainey v. Brotherhood of Railway and Steamship Clerks, 275 F.Supp. 292, 305 (E.D.Pa.1967), aff'd, 406 F.2d 744 (3 Cir. 1968), cert. denied, 394 U.S. 998 (1969), quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953).
 
 
 11
 Our reading of the record in the instant case discloses no indication of lack of good faith or honesty of purpose on the part of ALPA. Rather, the primary issue for trial on the merits relates to a bona fide dispute over two conflicting interpretations of an ambiguous contractual term. ALPA has within its membership employees who stand to gain or lose from either interpretation. In such a case, to say that the adoption by ALPA of one of these positions as legally correct would create a breach of duty enjoinable prior to trial, would be to render a preliminary injunction, couched in terms of duty of fair representation, so hopelessly elusive as to violate Rule 65(d). The order necessarily would contain "only an abstract conclusion of law, not an operative command capable of 'enforcement' ". International Longshoremen's Assoc., Local 1291 v. Philadelphia Marine Trade Assoc., supra, 389 U.S. at 74. The district court refused to issue such an order. We affirm that ruling.
 
 
 12
 The effect of the proposed preliminary injunction upon Airlift would be to prohibit the making of any changes affecting the seniority rights of the Grandfathers. This proposal falls even more clearly within the interdiction against overly-broad injunctions indicated in International Longshoremen's, supra. Here, there is a clear failure to describe in reasonable detail the "act or acts sought to be restrained". Rule 65(d). The provision in question, moreover, would be "so broad as to place the entire conduct of [Airlift's] business under the jeopardy of punishment for contempt for violating" the injunction. Russell C. House Transfer & Storage Co. v. United States, 189 F.2d 349, 351 (5 Cir.1951). While Airlift's characterization of the proposed injunction as one that "would inevitably paralyze Airlift" may be something of an overstatement, we do see a danger that Airlift would be exposed to contempt prosecution for the performance of acts not properly within the scope of the injunction. Cf. Williams v. United States, 402 F.2d 47, 48-49 (10 Cir.1967). Any number of normal business actions, not even remotely concerned with the Grandfathers' seniority rights and having only a limited and tangential effect thereon, might be in violation of the order. The district court refused to issue such an order. We affirm that ruling.
 
 III.
 Traditional Preliminary Injunction Tests
 
 13
 The district court's denial of a preliminary injunction may also be upheld under the traditional tests for determining whether a preliminary injunction should issue-namely, the possibility of irreparable harm if an injunction prior to trial does not issue, and the probability that the party seeking the preliminary relief will succeed on the merits. See, e.g., Stark v. New York Stock Exchange, 466 F.2d 743, 744 (2 Cir.1972); Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2 Cir.), cert. denied, 394 U.S. 999 (1969); Dino DeLaurentiis Cinematografica, S.p.A. v. D-150, Inc., 366 F.2d 373, 375 (2 Cir.1966).
 
 
 14
 The requirement that a party seeking a preliminary injunction demonstrate that it will suffer irreparable harm in the absence of preliminary relief necessitates more than a mere showing that the party seeking relief will see its relative position deteriorate. Preliminary injunctive relief is extraordinary relief. It requires a convincing demonstration that the balance of hardships tips decidedly toward the moving party. Dino DeLaurentiis Cinematografica, S. p.A. v. D-150, Inc., supra, 366 F.2d at 375.[2] On the record before us, we are unable to find either the likelihood of irreparable harm pending trial or a clear tipping of the balance of hardships toward appellant. The principal reason for this is our belief that the Grandfathers, should they prevail at the trial on the merits, can be made whole without a preliminary injunction. Monetary damages, whether in the form of back pay or otherwise, will of course be available, as will appropriate affirmative relief.[3] Placing this consideration alongside the very real burdens that would inure to appellees should a preliminary injunction issue of the breadth and vagueness of that sought, we hold that the district court's denial of the preliminary injunction should be affirmed.
 
 
 15
 Appellant also has not convinced us of the probability of his success on the merits. We of course do not intimate any view on the ultimate outcome of the case. We simply note that appellees' contentions on their face are sufficiently substantial to prevent appellant's prima facie case from overcoming its shortcomings on the other burdens. Unicon Management Corp. v. Koppers Co., 366 F.2d 199, 204-05 (2 Cir. 1966).
 
 
 16
 In short, we are unable to say that the district court's denial of appellant's motion for a preliminary injunction was clearly erroneous. We affirm those portions of the order concerning the Grandfathers' grievance against Airlift and ALPA.
 
 IV.
 District Court's Revised Order
 
 17
 Despite our agreement with the district court indicated above, there remains one portion of its order that we feel compelled to modify.
 
 
 18
 In its original order, the district court enjoined the appellees from processing a grievance collateral to that of appellant's here.[4] That grievance had resulted in a separate petition to the district court on a request similar to that pending in the instant case. The initial order of the district court enjoined the processing of that grievance until it had reached a final judgment on the issue whether the grievance was properly before the System Board of Adjustment. The district court subsequently modified its order to read, with respect to the related grievance:
 
 
 19
 "That any proceedings in connection with the processing of a certain grievance set forth in Exhibit 'H' of the moving papers are stayed, until such time as the judge who is assigned the case passes on it."
 
 
 20
 The clear import of the order is that "the judge who is assigned the case" will be given both the Grandfathers' and the collateral petition. That assumption is quite possibly erroneous, the result of which would be to place in some confusion the date on which the stay of the processing of the collateral grievance will expire. We therefore modify the district court's order of July 18, 1972 to conform to its order of June 22, 1972.
 
 
 21
 The order of the district court is affirmed in all respects, except for that portion regarding the stay of a certain related grievance, as to which it is modified to conform to the original order of June 22, 1972.
 
 
 22
 Since we are informed that this case has now been assigned to a single judge for all purposes, we suggest the earliest practicable trial on the merits.
 
 
 23
 Order modified and affirmed.
 
 
 
 [1]
 The collateral grievance, referred to in the papers and argument of the instant appeal as "Exhibit 'H' ", arose from the agreement by Airlift and ALPA to submit to arbitration the renegotiation of Slick's seniority terms as part of the overall negotiations for a new labor contract between Airlift and ALPA. The resulting arbitration award was challenged in a grievance petition by a former Slick employee, Irvin W. Frank, on behalf of himself and twelve others not members of the class represented here. The issue there specifically related to the order of layoffs. The Grandfathers sought to stay the processing of that grievance pending determination by the district court of the jurisdiction of the System Board of Adjustment, for fear that allowing the Board to proceed would severely prejudice the Grandfathers' case. Counsel for appellees agreed to stay the processing of that grievance
 
 
 [2]
 In Dino DeLaurentiis, supra, 366 F.2d at 375, Judge Smith stated the relationship between the factors of probability of success and likelihood of irreparable damage as follows:
 "[T]he weight to be given the probability of success is not precisely the same where other factors differ. While the party seeking a preliminary injunction has a burden of convincing with a reasonable certainty that it must succeed at final hearing where it appears that a lack of showing of irreparable damage also exists, the burden is less where the balance of hardships tips decidedly toward the party requesting temporary relief."
 
 
 [3]
 For example, experience under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. (1970), has demonstrated the uses to which a post hoc mandatory injunction may be put in the interest of insuring the full enjoyment of an employee's rightful position. See, e. g., United States v. Local 189, United Papermakers and Paperworkers, 301 F.Supp. 906, 919-25 (E.D.La.1969), aff'd, 416 F.2d 980 (5 Cir. 1969), cert. denied, 397 U.S. 919 (1970); United States v. International Brotherhood of Electrical Workers, Local 38, 428 F.2d 144, 151-52 (6 Cir.), cert. denied, 400 U.S. 943 (1970)
 
 
 [4]
 See note 1, supra