COLLEGE ENTRANCE EXAMINATION BOARD, Graduate Management Admission Council, Inc., Graduate Record Examination Board, Test of English as a Foreign Language Policy Council and Educational Testing Service, Plaintiffs,

v.

Mario M. CUOMO, as Governor of the State of New York; Thomas Sobol, as Commissioner of Education of the State of New York; Regents of the University of the State of New York; Martin C. Barell, as Chancellor, Board of Regents of the University of the State of New York; R. Carlos Carballada, as Vice Chancellor, Board of Regents of the University of the State of New York; Jorge L. Batista, Shirley C. Brown, Laura Bradley Chodos, Walter Cooper, Willard A. Genrich, Norma Gluck, Emlyn I. Griffith, Carl T. Hayden, Mimi Levin Lieber, Floyd S. Linton, Gerald J. Lustig, Louise P. Matteoni, J. Edward Meyer and Adelaide L. Sanford, as Members of the Board of Regents of the University of the State of New York; and Robert Abrams, as Attorney General of the State of New York, Defendants.

No. 90–CV–437.

United States District Court,
N.D. New York.

March 23, 1992.

Nixon Hargrave Devans & Doyle, Rochester, N.Y. (Harold A. Kurland, of counsel), Perkins & Coie, Washington, D.C. (David T. Biderman, John M. DeVaney, Karl L. Kellar, of counsel), for plaintiff Graduate Management Admission Council, Inc.

Wilmer Cutler & Pickering, Washington, D.C. (Howard P. Willens, Thomas P. Olson, of counsel), for plaintiffs Graduate Record Examination Bd., Test of English as a Foreign Language Policy Council, and Educational Testing Service.

Stanford Von Mayrhauser, Princeton, N.J., for plaintiff Educational Testing Service.

Sullivan & Cromwell, New York City (Edward W. Keane, Henry Christensen III, of counsel), for plaintiff College Entrance Examination Bd.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y. (David B. Roberts, Asst. Atty. Gen., of counsel), for defendants.

## MEMORANDUM DECISION
## AND ORDER

McCURN, Chief Judge.

### INTRODUCTION

Plaintiff, Graduate Management Admission Council ("GMAC"), moves pursuant to Fed.R.Civ.P. 65 for a preliminary injunction enjoining defendants (collectively referred to as "the State") from enforcing New York Education Law sections 341 and 342 ("Standardized Testing Act" or "STA") against GMAC or in connection with tests or related material which GMAC develops, sponsors or administers. As a basis for this motion, GMAC contends that the STA conflicts with, and is therefore preempted by, the Federal Copyright Act ("Act") of 1976. In addition, GMAC claims that its ultimate success on the merits is probable and that it will suffer irreparable injury if the court does not grant this motion.

### BACKGROUND

GMAC is one of five plaintiffs [1] who commenced this suit in 1990 seeking a declaration that sections 341 and 342 of the STA ("the disclosure provisions") as applied to them (1) conflict with, and therefore are preempted by, the Federal Copyright Act of 1976, (2) constitute direct and contributory copyright infringement, (3) violate the Commerce Clause of the United States Constitution, (4) constitute a taking of plaintiffs' property without just compensation in violation of the Fifth and Fourteenth Amendments, and (5) deprive plaintiffs of their property without due process of law in violation of the Fourteenth Amendment.[2] *See* Plaintiffs' Complaint at ¶ 1. In addition, plaintiffs sought a judgment permanently enjoining the State from enforcing sections 341 and 342 of the STA against them. *See id.*

Upon commencing this action, all of the plaintiffs except GMAC moved for a preliminary injunction seeking to enjoin enforcement of the STA against them.[3] In support of their motion, plaintiffs claimed that in the years between 1979 when the STA was enacted and 1990, they had curtailed the number of tests that they offered in New York while at the same time increasing the number of test dates nationwide because they did not want to subject additional tests to the STA's disclosure requirements. Moreover, the moving plaintiffs asserted that if the court granted their motion, they would increase the number of administrations of their tests in New York to national levels and would continue to disclose the same number of tests as they had in prior years.

Shortly before plaintiffs commenced this action, this court granted summary judg-

---

**1.** The other plaintiffs in this action are the College Entrance Examination Board ("CEEB"), the Graduate Record Examination Board ("GRE Board"), the Test of English As a Foreign Language Policy Council ("TOEFL Council"), and the Educational Testing Service ("ETS").

**2.** Section 341 states:

1. Whenever any test agency prepares or causes to have prepared research which is used in any study, evaluation or statistical report pertaining to a test operational after January first, nineteen hundred eighty, such study, evaluation or report shall be filed with the commissioner.
2. If any reports or other documents submitted pursuant to this section contain information identifiable with any test subject or test user institution, such information shall be deleted prior to filing with the commissioner.
3. All reports or other documents submitted pursuant to this section shall be public records.

N.Y. Educ. Law § 341 (McKinney's 1988). Section 342 states in pertinent part:
1. Within thirty days after the results of any standardized test are released, the test agency shall file or cause to be filed with the commissioner:
a. a copy of all test questions used in calculating the test subject's raw score;
b. the corresponding acceptable answers to those questions; and
c. all rules for converting raw scores into those scores reported to the test subject together with an explanation of such rules....
7. Documents submitted to the commissioner pursuant to this section shall be public records and, in collecting this material, the State Education Department shall be considered an archive under Title 17 § 108 U.S.C....
N.Y. Educ. Law § 342 (McKinney's 1988).

**3.** For purposes of this motion, the court adopts the State's recitation of the procedural history of this case.

ment to the plaintiff ("AAMC") in *Association of Am. Medical Colleges v. Carey*, 728 F.Supp. 873 (N.D.N.Y.1990), *reversed, vacated and remanded*, 928 F.2d 519 (2d Cir.1991), and permanently enjoined the State from enforcing sections 341 and 342 of the STA against it. At the time the present action was commenced, an appeal from this court's order in *AAMC* was pending before the Second Circuit. In light of the status of that case, the State decided to enter into an agreement with regard to the temporary relief sought by plaintiffs in the present suit rather than risk the entry of a preliminary injunction. Thus, the motion for preliminary injunction was resolved by a stipulation in which it was agreed that in the 1990–1991 test year the moving plaintiffs would continue to disclose their tests in New York at the same rate as they had in the past. In addition, plaintiffs would offer New York residents additional administrations of their tests with the understanding that these additional administrations would not be subject to the STA's disclosure provisions. Although GMAC was not one of the moving parties, it signed the stipulation which, as applied to it, stated "[p]laintiff Graduate Management Admission Council, Inc. shall voluntarily comply with the filing and disclosure requirements set forth in Sections 341 and 342 of the New York Education Law for the 1990–1991 test year; ..." *See* Stipulation dated May 11, 1990, at 2.[4]

The terms of the stipulation were to expire when all appellate proceedings were concluded in the *AAMC* litigation. The Second Circuit reversed the judgment of this court, vacated the permanent injunction and remanded the case for further proceedings on March 12, 1991. In addition, the court enjoined the State from enforcing the STA provisions against AAMC during the pendency of the remand proceedings. *Association of Am. Medical Colleges v. Cuomo*, 928 F.2d 519 (2d Cir. 1991). AAMC then applied for a writ of

certiorari which was denied by the Supreme Court on October 7, 1991. Due to the fact that the appellate proceedings in *AAMC* extended into the 1991–1992 test year, all of the plaintiffs in the present suit had a right, under the stipulation, to curtail the disclosure and filing of their test forms in that year. Only GMAC availed itself of this opportunity. While the other plaintiffs continued to disclose tests at their historic rates, GMAC cut the number of disclosed tests in half (from 4 tests to 2 tests).

In November 1991, plaintiffs initiated discussions with the State to extend the stipulation regarding preliminary injunctive relief for a period of one more year. All of the plaintiffs, except GMAC, were willing to continue disclosing their tests at the same rates as they had done in the 1990–1991 test year. GMAC, on the other hand, was willing to disclose only two of the four tests that it would administer in the 1992–1993 test year. A stipulation extending the original compromise was executed by all plaintiffs except GMAC on December 24, 1991, and filed on January 21, 1992. GMAC then filed and served the present motion for a preliminary injunction on February 20, 1992.

## DISCUSSION

 Any time a court is called upon to grant preliminary relief, it must keep in mind the well-settled rule that a preliminary injunction is an extraordinary remedy that should be granted only upon a *clear* showing that there is a likelihood of success on the merits and irreparable injury. *Diversified Mortgage Investors v. U.S. Life Title Ins. Co. of New York*, 544 F.2d 571 (2d Cir.1976) (citing *Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319, 323 (2d Cir.), *cert. denied*, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969)); *Sanders v. Air Line Pilots Ass'n Int'l*, 473 F.2d 244, 248 (2d Cir.1972). Ordinarily, in the Second Circuit, a party seeking a preliminary injunction must demonstrate irrepara-

---

4. It is interesting to note that none of the other plaintiffs that signed the stipulation agreed to disclose all of their tests. For example, the GRE Board agreed to administer 5 examinations in New York but to disclose only 3 of them (60%).

The ETS agreed to administer 6 or 7 SAT exams in New York but to disclose only 4 of them (approx. 80%). Finally, the TOEFL Council agreed to administer 12 TOEFL exams but to disclose only 5 of them (approx. 42%).

ble injury and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Laureyssens v. Idea Group, Inc.*, 768 F.Supp. 1036, 1046 (S.D.N.Y.1991) (citing *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 78 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1622, 113 L.Ed.2d 720 (1991) (citing in turn *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979))). However, "where the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim." *Plaza Health Lab., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir.1989). Accordingly, because GMAC seeks to challenge the State's right to compel it to disclose all of its tests pursuant to the statutory scheme established by the STA, GMAC is entitled to injunctive relief only if it is able to demonstrate irreparable injury and a likelihood of success on the merits.

Finally, in its determination of this motion, the court is cognizant of its obligations pursuant to Fed.R.Civ.P. 52(a) to "set forth the findings of fact and conclusions of law which constitute the grounds of its action" in granting or refusing to grant interlocutory injunctions. *See* Fed. R.Civ.P. 52(a); *Fengler v. Numismatic Americana, Inc.*, 832 F.2d 745 (2d Cir.

1987) (quoting *Inverness Corp. v. Whitehall Lab.*, 819 F.2d 48, 50 (2d Cir.1987)) (Rule 52's requirements are mandatory and cannot be waived). Thus, in compliance with this rule, the following discussion constitutes this court's reasoning with respect to GMAC's motion for a preliminary injunction.

## A. Likelihood of Success on the Merits

Although its complaint sets forth claims that the STA deprives it of its constitutional rights, GMAC addresses its entire argument concerning the likelihood of success on the merits to its copyright infringement claim.[5] In this regard, GMAC contends that because its test forms are registered as "secure tests" with the Copyright Office, the only basis for finding that the disclosure requirements of the STA do not constitute infringement must be founded on the fair use doctrine provided for in section 107 of the Act.[6] The State concedes that GMAC's test forms are secure within the meaning of 37 C.F.R. section 202.20(b)(4). Nevertheless, it argues that they do not fit easily into the published/unpublished dichotomy established by the Act. This court does not agree. Pursuant to 17 U.S.C. section 101 "publication" is defined as "[t]he *distribution* of copies ... of a work to the public *by sale or other transfer of ownership, or by rental, lease, or lending.*" 17 U.S.C.A. § 101 (West 1977) (emphasis added). On the other hand, by its very definition, a secure test is one over which the owner of the copyright *does not relinquish ownership* or control. Thus, to concede that GMAC's tests are

---

5. In its memorandum of law, GMAC states that "[d]ue to the overwhelming authority of the *AAMC* case, it is not necessary to discuss GMAC's claims that the STA violates the federal Constitution, but these claims provide additional support for the likelihood of GMAC's success on the merits." *See* GMAC's Memorandum of Law at 28 n. 16. Given the fact that GMAC has the burden to show that it is entitled to injunctive relief, the court concludes that this statement falls far short of meeting that burden. Accordingly, the court concludes that because GMAC has failed to demonstrate a likelihood of success on the merits of its constitutional claims, these claims cannot serve as a basis for granting the relief requested.

6. Pursuant to 37 C.F.R. section 202.20(b)(4),

> [a] *secure test* is a nonmarketed test administered under supervision at specified centers on specific dates, all copies of which are accounted for and either destroyed or returned to restricted locked storage following each administration. For these purposes a test is not marketed if copies are not sold but it is distributed and used in such a manner that ownership and control of copies remain with the test sponsor or publisher.

37 C.F.R. § 202.20(b)(4) (1991).

secure is likewise to concede that they are unpublished works within the meaning of the Act. Further support for this conclusion can be found in the Seventh Circuit's statement that "[w]e agree with the Register of Copyrights that the [Multistate Bar Exam] would probably be classified as an unpublished work under 17 U.S.C. § 101...." *National Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.2d 478, 486 n. 8 (7th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *see also AAMC*, 928 F.2d at 524 (quoting *National Conference of Bar Examiners* in support of its conclusion that the secure nature of the test favored AAMC when considering the second factor of the fair use doctrine).

■ Section 107 states in pertinent part that "[t]he fair use of a copyrighted work, ... is not an infringement of copyright." 17 U.S.C.A. § 107 (West 1977). Therefore, in order to demonstrate that it is likely to succeed on the merits of its copyright infringement claim, GMAC must show that the State's use of its test forms is not a fair use.[7] Pursuant to section 107, "[i]n determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include"—

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit education purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C.A. § 107 (West 1977). Although illustrative of the principles a court should consider to determine whether or not a particular use is fair, these factors are not meant to be exclusive. "[S]ince the doctrine [of fair use] is an equitable rule of

reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560, 105 S.Ct. 2218, 2230, 85 L.Ed.2d 588, 607 (1985) (quoting House Report at 65, reprinted in 1976 U.S. Code Cong. & Admin. News at 5659, 5678).

Relying heavily on its contention that this case is "virtually indistinguishable" from *AAMC*, GMAC discusses only the fourth factor of the fair use test as a basis for its position that it is likely to succeed on the merits of its copyright infringement claim. Without rendering an opinion about the validity of this assumption, the court will briefly discuss the other three factors which must be considered in determining whether, under the circumstances of this case, the State's use is fair. Nevertheless, the court will concentrate its discussion, as GMAC has done, on GMAC's likelihood of success on the merits as to this fourth factor which is "undoubtedly the single most important element of fair use." *Harper & Row, Publishers Inc. v. Nation Enters.*, 471 U.S. 539, 549, 105 S.Ct. 2218, 2225, 85 L.Ed.2d 588, 600 (1985).

### 1. Purpose and Character of the Use

■ The State contends that its use of GMAC's test forms "serves the public's interests in ensuring the fairness and objectivity of standardized school admissions tests, evaluating the accuracy of the scoring process, eliminating potential bias and opening up a process that has a major impact on the lives and careers of students in New York." *See* State's Memorandum of Law at 25. Furthermore, the State claims that its use is non-commercial and is prompted solely by its desire to "mak[e] tests and other materials available to the portion of the public concerned with the fairness and accuracy of the plaintiff's test materials." *Id.* at 26. Although GMAC appears to concede that this factor weighs in favor of the State, it nonetheless argues

---

**7.** GMAC cites this court's decision in *AAMC* to support its assertion that the party claiming fair use has "the burden of production and persuasion to show that the exception applies." *AAMC*, 728 F. Supp. at 881. However, the court made that statement in connection with a motion for summary judgment. In the present case, GMAC is seeking preliminary relief and therefore it bears the burden to demonstrate the likelihood that it will prevail on this claim.

that this is not determinative of fair use "because the other three factors weigh heavily against the State." *See* GMAC's Memorandum of Law at 23 n. 12. Given the facts before it, the court concludes, as it did in *AAMC*, that "the strong public purpose served by the Standardized Testing Act causes the first factor to cut clearly in favor of the defendants." *AAMC*, 728 F. Supp. at 885.

### 2. Nature of the Copyrighted Work

 The State offers two arguments in support of its contention that this second factor weighs in its favor. The first argument is premised on its belief that GMAC's test forms, once administered, are published, rather than unpublished, works. Secondly, it argues that because the GMAC is essentially factual in nature, the scope of fair use is greater and conversely the scope of protection is narrower. The court has already discussed why the State's first argument is unsupportable. To reiterate, when 37 C.F.R. section 202.20's definition of a secured test is read in conjunction with 17 U.S.C. section 101's definition of publication, there is only one conclusion—as long as the test remains secure, it is unpublished. Thus, the mere fact that GMAC administers the test, without more, is not enough to convert it into a published work for purposes of the Act. Furthermore, in a similar situation, the Supreme Court stated "[t]his fact [that a work is unpublished] is a factor tending to negate the defense of fair use." *Harper & Row*, 471 U.S. at 551, 105 S.Ct. at 2226, 85 L.Ed.2d at 601 (quoting 3 Nimmer § 13.05 at 13–62 n. 2). Thus, this court concludes, as the Second Circuit did in *AAMC*, that "[t]he secure nature of the [GMAT] weighs in favor of [GMAC]" with respect to this second factor. *See AAMC*, 928 F.2d at 524.

 In support of its second argument that GMAC's tests are entitled to only a narrow scope of protection because they are primarily factual in nature, the State cites *Feist Publications Inc. v. Rural Tel. Serv. Co.*, — U.S. —, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). However, *Feist* is distinguishable from this case on its facts. In *Feist*, the Court held that alphabetical listings in telephone directories were not sufficiently creative to form the basis for a claim of copyright infringement. *Id.* at —, 111 S.Ct. at 1297, 113 L.Ed.2d at 380. Certainly, it cannot be argued that, in terms of the creative effort required, the formulation and compilation of questions which constitute a standardized test are comparable to that involved in the compilation of an alphabetical list of names. Furthermore, in a case involving a test similar to the GMAT, a district court held that MCAT questions were undoubtedly the result of original work performed by scientists and scholars irrespective of the fact that the questions invoked scientific facts in constructing the test problems. *See Association of Am. Medical Colleges v. Mikaelian*, 571 F.Supp. 144, 150 (E.D.Penn.1983), *aff'd without opinion*, 734 F.2d 3 (3d Cir.1984). GMAC has presented this court with sufficient evidence to demonstrate that a significant amount of creative effort is involved in the construction of its test forms. Given this evidence, the court concludes that this factor weighs in favor of GMAC.

### 3. Amount and Substantiality of the Portion Used

 There is no doubt that section 342 of the STA compels the filing of substantially all of the questions that comprise each of GMAC's test forms. In fact, the only questions which may be excluded are those not used in the calculation of the test taker's score. Despite this fact, however, the State contends that because its use is undertaken for a purpose functionally different from that of GMAC, its near-total reproduction of each test form does not preclude the application of the fair use doctrine. In this regard, the Supreme Court has specifically noted that under circumstances such as these, "the fact that the entire work is reproduced ... does not have its ordinary effect of militating against a finding of fair use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449–50, 104 S.Ct. 774, 792, 78 L.Ed.2d 574, 597 (1984); *see also Update Art Inc. v. Maariv Israel Newspaper, Inc.*,

635 F.Supp. 228, 231 (S.D.N.Y.1986) (citing Nimmer on Copyright, § 1305[D] at 13–90). Here, the State uses the test forms to "guarantee that the GMAT is fair, valid and responsive to the public interests it serves." *See* State's Memorandum of Law at 28. This use is in no way functionally similar to GMAC's use of its test forms. Given these facts, the court concludes that the State's substantial use of the forms must be balanced against the functional differences between these two uses. Having performed such a balancing, the court concludes that this factor weighs in favor of neither party.

### 4. Effect Upon the Potential Market or Value of the Copyrighted Work

■ In support of its contention that ultimately it will be able to succeed in showing that disclosure of its test forms will severely diminish or destroy their value, GMAC alleges that once the tests are disclosed they cannot be reused because to do so would render them useless as fair measuring devices. *See* GMAC's Memorandum of Law at 25–26, 28. In addition, GMAC contends that because whole categories of questions become obsolete or stale the supply of potentially reusable disclosed questions is limited, thus facilitating memorization. *See id.* at 26. Furthermore, GMAC states that if disclosed questions were to be used again, they would have to be pretested a second time to ensure that disclosure had not affected their statistical characteristics. This procedure is, GMAC contends, a very costly process. *See id.*

In *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574, 597 (1984), the Supreme Court held that "[a] challenge to a noncommercial use of a copyrighted work requires proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for copyrighted work...." The problem with applying this

holding, as well as those of other cases which have discussed this fourth fair use factor, to the present case is that those courts were concerned with the effect of the second use on the "potential market" for the copyrighted work and not with the effect of the secondary use on the value of the copyrighted work itself.[8] The State's arguments in opposition to this motion are illustrative of this problem. The State contends that

> [b]ecause the GMAT is virtually indispensable to any student desiring to enter an MBA program, the GMAC has a 'captive audience' for its test. So long as it remains the gatekeeper to post-graduate business schools, the GMAC will always have a market for its test, regardless of whether test forms are disclosed after use in accordance with the Act.

*See* State's Memorandum of Law at 30. This court agrees, at least for purposes of this motion, that the disclosure requirements of the STA have little or no effect on the potential market for the GMAT. However, such a conclusion is not dispositive of the real issue before the court—the effect of such disclosure on the value of these disclosed test forms.

The parties strongly disagree as to whether test items, once disclosed, can be reused. In his declaration in support of the State's position, Professor Haney presents some evidence that disclosed questions can, and have been, reused and that such disclosure and reuse do not affect the validity of the test which contains these reused questions. *See* Haney Affidavit at 5–6. On the other hand, GMAC, through the declarations of its experts, claims that

> the reuse of disclosed test items would undermine the very reason for the GMAT—measuring students' skills on a fair and equal basis. If the GMAT contained test forms and questions that has [sic] been disclosed, it would no longer be just a measure of skills; it would also

---

**8.** *See, for example, New Era Publications, Int'l v. Carol Publishing Group,* 904 F.2d 152 (2d Cir. 1990); *Consumers Union of the United States, Inc. v. General Signal Corp.,* 724 F.2d 1044, 1051 (2d Cir.1983), *cert. denied,* 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *Update Art, Inc. v. Maariv Israel Newspaper, Inc.,* 635 F.Supp. 228 (S.D.N.Y.1986); *New York Times Co. v. Roxbury Data Interface, Inc.,* 434 F.Supp. 217 (D.N.J.1977).

measure a student's familiarity with the test questions. As such, there is a grave doubt that the GMAT would be a valid predictor of success in graduate and business schools.

*See* GMAC's Memorandum of Law at 9.

Both parties cite a study entitled "Effects of Test Disclosure on Performance on the Test of English as a Foreign Language" ("TOEFL Study") to support their respective positions. GMAC cites extensively from pages 461–62 of this article as proof of the fact that a significant disclosure effect would result if test forms contained items which were made available to test takers prior to test administration. *See* TOEFL Study at 461–62. On the other hand, the State cites this article to prove its point that as the universe of disclosed test forms increases the effect of such disclosure on the test takers' results will decrease. In fact, the study concludes by stating that "[a]s more and more disclosed TOEFL tests become available, then the effect of test disclosure should diminish to a negligible level, eventually allowing disclosed TOEFL items to be reused in institutional test forms." *Id.* at 463–64. For example, in the TOEFL Study, a decrease in the disclosure effect was noted when the number of disclosed tests was increased from six to twelve. In the present case, GMAC has already disclosed more than forty test forms. While the court cannot speculate about how many test forms must be disclosed before the effect of disclosure becomes negligible, it seems reasonable to assume that the effect of disclosure will continue to decrease as GMAC continues to disclose its test forms as required by the STA. Thus, at this stage of the litigation, the most that can be said is that there is a significant factual dispute about the effects of disclosure on the value of GMAC's test forms.

In addition, the problem of determining whether or not GMAC is likely to succeed in demonstrating that the STA's disclosure requirements do not constitute a fair use is complicated by the fact that "[w]here a claim of fair use is made, a balance must sometimes be struck between the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied." *MCA, Inc. v. Wilson,* 677 F.2d 180, 183 (2d Cir. 1981). The Second Circuit recognized this problem in *AAMC* when it stated that

> [w]e reject the district court's conclusion that a copyright owner, such as AAMC should not be "required to change its operations when another individual or entity is interfering with its ownership rights under the Federal Copyright Act in order to make the fair use exception fit." *AAMC II,* 728 F.Supp. at 888.... Generally, a copyright owner should not be expected to take steps to minimize the potential harm that a particular unauthorized use might cause to the copyrighted material's value. However, given the laudable goals of the State in enacting the STA, this is a case in which some accommodation by the copyright owner may be legitimately expected.

*AAMC,* 928 F.2d at 525–26.

This court agrees with the Second Circuit that the STA's disclosure requirements serve a laudable goal and that GMAC should be expected to make some kind of accommodation. Thus, with respect to this fourth factor, given the factual dispute which exists and the need for accommodation under these circumstances, the court concludes that this factor favors neither party.[9]

■ In conclusion, given the fact that factor one favors the State, factor two favors GMAC, and factors three and four favor neither party, the court holds that GMAC has not demonstrated a likelihood of success on the merits of its copyright infringement claim.

---

9. Normally, a court should not grant a preliminary injunction on the basis of affidavits that evidence disputed issues of fact. *See Forts v. Ward,* 566 F.2d 849, 851 (2d Cir.1977). In recognition of this principle, the court asked GMAC at oral argument if it would like an evidentiary hearing to support its motion. GMAC declined this offer in a letter dated March 17, 1992, in which it stated that after carefully considering the record it believed there was no need for an evidentiary hearing.

## B. Irreparable Injury

Having concluded that GMAC has failed to demonstrate a likelihood of success on the merits, GMAC would not be entitled to the preliminary relief it seeks even if it were able to demonstrate irreparable injury. However, in the interest of being thorough, the court will take a moment to discuss this second prerequisite to a grant of a preliminary injunction.

In its memorandum of law, GMAC suggests two grounds on which this court could find that GMAC would suffer irreparable injury if the court did not grant its request for preliminary relief. First, GMAC claims that if a party establishes a prima facie case of copyright infringement, it is entitled to a preliminary injunction. *See* Plaintiff's Memorandum of Law at 29. Secondly, GMAC claims that because it has alleged deprivations of its constitutional rights, no further showing of irreparable injury is necessary.[10] *See id.* at 30 n. 17.

■ In order to establish a prima facie case of copyright infringement, a plaintiff must demonstrate that the copyright is valid and that it has been infringed. *See Rushton v. Vitale*, 218 F.2d 434, 436 (2d Cir.1955); 11 Wright & Miller, *Federal Practice and Procedure* § 2948, at 440–41 (West 1973). There is no dispute that GMAC's copyright is valid. Nevertheless, the court's holding that GMAC has not shown a likelihood of success on the merits

of its claim that the STA's disclosure requirements do not constitute a fair use undermines GMAC's contention that it has established a prima facie case that its copyright has been infringed. *See Gianni Cereda Fabrics, Inc. v. Bazaar Fabrics, Inc.*, 335 F.Supp. 278 (S.D.N.Y.1971). Absent such a showing, the court concludes that GMAC has failed to demonstrate that it will suffer irreparable injury if this court does not grant its motion.[11]

## C. Other Equitable Considerations

■ Even if this court had held that GMAC had demonstrated irreparable harm, there is still an equitable reason which mitigates against this court granting GMAC's motion for a preliminary injunction. *See Gianni*, 335 F.Supp. 278, 280 (rule that preliminary injunction should issue when plaintiff makes out prima facie case of copyright infringement does not mandate that the court neglect its duty to consider the need for such relief before issuing it). In this regard, courts have held that delays in seeking preliminary injunction serve as a ground for denying such relief. As the court in *Gianni* stated "[b]y sleeping on its rights a plaintiff demonstrates the lack of need for speedy action and cannot complain of the delay involved pending any final relief to which it may be entitled after a trial of all the issues...." *Gianni*, 335 F.Supp. 278, 280 (7 month delay) (quoting *Gillette Co. v. Ed Pinaud,*

---

10. Although "[a]n alleg[ation] of alleged constitutional infringement will often alone constitute irreparable harm," a party seeking preliminary relief must still demonstrate a likelihood of success on the merits of this constitutional claim. *Associated Gen. Contractors of California, Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1412 (9th Cir.1991) (quoting *Goldie's Bookstore v. Superior Court,* 739 F.2d 466, 472 (9th Cir. 1984)); *see also Legi-Tech Inc. v. Keiper*, 601 F.Supp. 371 (N.D.N.Y.1984). Since GMAC has not even attempted to demonstrate a likelihood of success on the merits of its constitutional claims, these claims do not warrant an award of a preliminary injunction.

11. GMAC contends that the Second Circuit's decision to reinstate the preliminary injunction during the pendency of the remand proceedings in *AAMC* supports its position that a plaintiff who establishes a prima facie case of copyright infringement is entitled to a preliminary injunc-

tion. *See* GMAC's Reply Memorandum of Law at 14. This court fails to see the connection. In its decision in *AAMC,* the Second Circuit articulated no reason for reinstating the preliminary injunction. It may be that its only reason for doing so was that this court had previously granted AAMC a preliminary injunction and therefore the Second Circuit merely wanted to maintain the status quo. Moreover, while it is true that a party who establishes a prima facie case of copyright infringement need not make a detailed showing of irreparable harm, *Wainwright Securities Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978), this court has determined that GMAC has made no such showing. Thus, even if GMAC has correctly interpreted the Second Circuit's reason for reinstating the preliminary injunction in *AAMC,* such a decision would not apply to GMAC.

*Inc.*, 178 F.Supp. 618, 622 (S.D.N.Y.1959)); *see also Walt Disney Prod. v. Basmajian,* 600 F.Supp. 439, 442 (S.D.N.Y.1984) (less than 4 month delay); *American Fabrics Co. v. Lace Art, Inc.,* 291 F.Supp. 589 (S.D.N.Y.1968) (7 month delay); *Klauber Brothers, Inc. v. Lady Marlene Brassiere Corp.,* 285 F.Supp. 806, 808 (S.D.N.Y.1968) (year delay "disentitles [movant] from the drastic threshold remedy it seeks").

In the present case, the STA became effective on January 1, 1980. GMAC and the other plaintiffs in this case waited 10 years to commence this suit. In addition, GMAC, by stipulation, voluntarily continued to comply with the STA's disclosure requirements as to all its test forms for an additional year and then agreed to disclose two of its four tests for another year before moving for preliminary relief. In spite of these facts, GMAC argues that its motion is timely and that the State's argument to the contrary is based on the "erroneous assumption that GMAC's motion is addressed to past irreparable harm." *See* GMAC's Reply Memorandum at 12. To the contrary, GMAC asserts that it seeks preliminary relief to protect future violations of its copyrights and the irreparable injury which will occur each time one of its individually copyrighted test forms is disclosed.

This court finds GMAC's argument unpersuasive. Even if, as GMAC alleges, the disclosure of each of its test forms constitutes a new and distinct violation of its copyright, GMAC could have made this same argument at any time during the last ten years. For whatever reason, GMAC chose not to do so. GMAC is entitled to make such a tactical decision, but having done so GMAC must bear the consequences of this delay. *See New Era Publications Int'l v. Henry Holt & Co.,* 684 F.Supp. 808, 811 (S.D.N.Y.1988), *aff'd,* 873 F.2d 576 (2d Cir.1989). Moreover, any alleged harm that GMAC may suffer during the pendency of this action is identical to the harm, if any, that it has endured during the last 10 years each time it has disclosed a test form. Given these facts and keeping in mind that a preliminary injunction is an extraordinary remedy, the court concludes

that GMAC has failed to demonstrate the need for the preliminary relief it now seeks.

## CONCLUSION

Having concluded that GMAC has not met its burden to show either irreparable injury or a likelihood of success on the merits of its copyright infringement claim and that its delay in seeking such relief further mitigates against the court's granting its request at this time, the court denies GMAC's motion for a preliminary injunction.

IT IS SO ORDERED.